V. M. BLANDING et al., Appellants, v. DAVENPORT, IOWA & DAKOTA RAILROAD COMPANY et al., Appellees.

| 88 | 225 |
|----|-----|
| 93 | 219 |
| 88 | 225 |
| 98 | 171 |
| 88 | 225 |
| 112 | 123 |

1. **Mechanic's Lien:** CONTRACT: CONSTRUCTION: AUTHORITY OF AGENT. A railroad company having let the construction of its line to the firm of W. & F., the said firm sublet a portion of the work to the plaintiffs by a contract in writing to which the plaintiffs and W. & F. alone were parties, but the secretary of the railroad company was also secretary for the firm of W. & F. Subsequently an oral contract was made between the plaintiffs and W. & F. for further work on said railroad. At the time of both contracts the secretary of the railroad company was also the secretary for said firm, but neither the firm nor said secretary had any authority to bind the railroad company by any contract, nor did they at any time claim to be acting for the railroad company in making said contracts. It appeared, however, that said secretary, having no printed vouchers of the firm of W. & F., issued to the plaintiffs for the work done under said contracts a form of voucher made for the railroad company, and which purported to bind the company, but the company had no knowledge that such vouchers had been issued until after the plaintiffs filed a statement for a lien for work done under both of said contracts. *Held,* that the plaintiffs were not entitled to a mechanic's lien as principal contractors.

2. ———: ———: SUBCONTRACTOR MUST TAKE NOTICE OF CONTRACT WITH OWNER. A subcontractor being required to take notice of the terms of the contract between the principal contractor and the owner, *held,* that the plaintiffs could not be heard to say that they supposed that in making said contracts W. & F. were acting as agents for the railroad company.

*Appeal from Scott District Court.*—HON. ANDREW HOWAT, Judge.

THURSDAY, MAY 18, 1893.

ACTION to enforce a mechanic's lien. Decree for the defendants. The plaintiffs appeal.—*Affirmed.*

*Wm. K. White* and *J. T. Kenworthy*, for appellants.

*Cook & Dodge* and *Davidson & Lane*, for Davenport, Iowa & Dakota Railway Company, and Burlington, Cedar Rapids & Northern Railway Company, appellees.

*A. E. Swisher*, for Farmers' Loan & Trust Company, appellee.

KINNE, J.—I. The plaintiffs claim a mechanic's lien for seven thousand, three hundred and nine dollars and ninety-two cents on the property of the Davenport, Iowa & Dakota Railroad Company. They aver that on October 1, 1888, they made a verbal contract with said railroad company to grade a certain part of its line of road, at an agreed price per yard; that under said contract they performed work and labor amounting to over fifteen thousand dollars; that on December 30, 1888, the plaintiffs and said railroad company had an accounting for the work done, and there was found due the plaintiffs seven thousand, three hundred and nine dollars and two cents, which said company agreed to pay on demand; that said company has refused to pay said sum; at the time said accounting was made, said company executed and delivered to the plaintiffs a certificate of indebtedness, showing the amount of work done, the payment thereon, and the balance due; that on March 2, 1889, the plaintiffs filed a statement for a lien with the clerk of the district court of Scott county, Iowa.

In a second count, the plaintiffs claim a lien for

<span style="margin">1. MECHANIC'S lien: contract construction: authority of agent.</span>

the same indebtedness by virtue of a written contract made by said company with the defendants D. R. W. Williams and Patrick Flynn, under the firm name of Williams & Flynn, for the construction of said road, which was dated October 28, 1887. That on October 1, 1888, Williams & Flynn, while performing work on said road, applied to the plaintiffs to work thereon as subcontractors, but the plaintiff refused so to do; and it was then agreed between the plaintiffs, the railroad company, by one Fulton, as its secretary, and D. R. W. Williams, who, the plaintiffs claim, were the officers and agents of the company, that the plaintiffs should do the work at a price then agreed upon, and that said company would pay the plaintiffs said price, and deduct the amount so paid from the sum due and to be paid Williams & Flynn under their said written contract. It is said that the plaintiffs did work to the amount of over fifteen thousand dollars, and after its completion, on December 30, 1888, they had an accounting with the railroad company, when there was found due the plaintiffs the sum of seven thousand, three hundred and nine dollars and two cents, which said company agreed to pay on demand. That at the time of such accounting the company executed and delivered to the plaintiffs a certificate of indebtedness, the same as is set out in the first count, and that the company refuses to pay the sum due. That a statement for a lien was filed at the time heretofore mentioned.

The defendant, the Davenport, Iowa & Dakota Railroad Company, claims it is not, and never has been, indebted to the plaintiffs, and that the plaintiffs have no claim for a lien upon its property. The defendants, the Davenport, Iowa & Dakota Railroad Company and the Burlington, Cedar Rapids & Northern Railway Company, say that Fulton and D. R. W. Williams never made, or assumed to make, a contract for the Davenport, Iowa & Dakota Railroad Company

with the plaintiffs, for the construction of any part of its road; that said Williams was never an officer or agent of the company; that Fulton never had any authority to make such contract with the plaintiffs, or any contract in relation to the construction of that portion of the road upon which the plaintiffs claim to have done work and labor; that said Davenport, Iowa. & Dakota Railroad Company never had a settlement. with the plaintiffs for any work done on its road; that said company never had a contract with the plaintiffs. to perform work for it; that the work done by the plaintiffs was done as subcontractors under the firm of Williams & Flynn; that the settlement had by the plaintiffs with Fulton was for said firm, and that he had no authority to settle for the railroad company, or to execute any statement of account for it; that the company had no knowledge of the settlement claimed by the plaintiffs until after the plaintiffs filed their statement for a lien.

The Farmers' Loan & Trust Company filed a separate answer, setting out many of the matters heretofore referred to, and also denied generally the averments. of the petition. They also say that on May 28, 1888, the railroad company executed to them, as trustees, a mortgage securing the sum of four hundred and ninety-six thousand dollars in bonds, which were issued; that said mortgage was a first lien upon the road; that these bonds were delivered to Williams & Flynn. It pleads that the plaintiffs are estopped from claiming a lien; also that they did not file their lien within thirty days after the work was completed, and at the time the same was in fact filed the railroad company had paid. the original contractors in full. The defendants Williams & Flynn made default, and the case was tried as to the other parties.

II. The following facts are either admitted by the pleadings or established upon the trial: That on

2. ——: ——: sub-contractor must take notice of contract with owner. ·October 27, 1887, the Davenport, Iowa & Dakota Railroad Company entered into a written contract with Williams & Flynn to construct and equip its road from the Amizon Vinegar Works, in the city of Davenport, to the crossing of Chicago & Northwestern Railway, and was to pay said ·contractors one-half of the tax voted by the city of Davenport when the first ten miles of the road were .graded, bridged, and tied, and the balance when thirty miles of the road were completed. It was also to pay said contractors ten thousand dollars of its first mortgage bonds for each mile, as graded, bridged, and tied, .and six thousand: dollars additional per mile, in said bonds, for every full mile ironed. That Williams & .Flynn entered upon the work October 1, 1888, and the work done by the plaintiffs was on a part of the line of the road thus contracted to be constructed by Williams & Flynn. That, at the time the plaintiffs took the first contract, Mr. Flynn told them he would prepare a written contract with them. That such a contract was prepared and entered into between the plaintiffs and Williams & Flynn in August, 1888, and said contract covered a large part of the work now in controversy. That Flynn showed the plaintiffs the work they were to do. That neither of the firm, then or at any other time, represented to the plaintiffs that in the letting of .said contract they were acting as agents for the railroad ·company. In October, 1888, Williams & Flynn made .an oral contract with the plaintiffs to do more grading upon the road. At this time it was not represented to the plaintiffs that Williams & Flynn or Fulton were acting for the railroad company. When the plaintiffs entered into the second contract, they knew that the first contract, which was in writing, purported to be made by Williams & Flynn, acting on their own behalf. Yet, knowing this fact, they made no objection to entering into another contract with them, and did not

even express a desire that the railroad company should
be made a party to the contract. H. C. Fulton was
during all this time the secretary of the railroad com-
pany. It does not appear that the railroad company
ever held Williams & Flynn out to the plaintiffs as its
agents or officers empowered to make contracts on its
behalf. There is no claim that they had any express
authority to do so. H. C. Fulton, while secretary of
the railroad company, was also in the employ of Wil-
liams & Flynn, as their secretary or clerk. He kept
their books, audited the claims which were presented
against them, and issued vouchers for work done for
them by the plaintiffs and others. Fulton never had
any express authority to act for the railroad company
in making contracts for it, or to issue statements or
vouchers which might be evidence of any indebtedness
from it to the plaintiffs or to others, at any time during
the plaintiffs' connection with the railroad work.

It does appear that at first the railroad company
undertook to build two miles of the road, long prior to
the time they entered into the contract with Williams &
Flynn. At that time they had permitted Fulton to act
quite generally for them. At that time, also, the com-
pany, for its use in dealing with those who furnished it
with supplies, had printed some blank vouchers. These
blanks were not all used at the time the plaintiffs' work
was going on; and as Williams & Flynn had furnished
no blank vouchers to Fulton, to use in the transaction
of their business, he used some of these old blanks,
which, in form, purported to bind the railroad company,
in making statements of the condition of the plaintiffs'
account with Williams & Flynn. These statements he
also signed as "secretary." The railroad company had
no knowedge that he was using these blanks until after
the plaintiffs filed their lien. There never was any
settlement or accounting between the plaintiffs and the
railroad company, unless the filing of these blanks and

signing them, as before stated, constituted one. There is no controversy as to the fact that the plaintiffs performed the labor claimed, and filed their lien as claimed, and that they have not been paid.

III. The plaintiffs' first contention is that they are principal contractors; that their contract was made directly with the railroad company. In view of the facts above found, and others which might be stated, it is clear that there is no foundation for such a claim. The plaintiffs made this first contract with Williams & Flynn. They had all their negotiations with them. It was they who fixed the price. The plaintiffs knew, or were bound to know, that Williams & Flynn had for a long time prior thereto had a written contract with the railroad company to construct the entire line of road, including the work they, the plaintiffs, undertook to do. They had actual knowledge that Williams & Flynn were then engaged upon the work, and it was their business to acquaint themselves with the facts touching the relationship existing between the railroad company and Williams & Flynn. They can not blame others for results which proper inquiry would have protected them against. There is no pretense that the railroad company, or any one else, ever informed the plaintiffs that Williams & Flynn were agents for the company, and that they contracted with them as such. It affirmatively appears that the plaintiffs took no steps whatever to acquaint themselves with the real situation. They never asked with whom they were contracting. Had they used any care, they would have known that they were not dealing with any one having a shadow of authority to bind the railroad company.

But there is another and all-sufficient reason why it can not be held that the plaintiffs thought they were contracting with the railroad company, or in fact did so. It is an undisputed fact that the plaintiffs entered into a written contract with Williams & Flynn, as con-

tractors, to do a large part of this very work for which they are now seeking to recover. By that contract they must be bound. There is no claim that it was abandoned or superseded. The firm name was signed to this contract by one of its members. There is no evidence in this case that would justify us in relieving the plaintiffs from all the obligations attaching to this contract. It fixed their relationship to Williams & Flynn as subcontractors.

IV. Recovery is sought under the second count of the petition on the theory that Williams & Flynn had a contract with the railroad company to construct the road, and that these contractors solicited the plaintiffs to do work upon the road under them as sub-contractors, and that the plaintiffs refused so to do, when it was agreed between the railroad company, Williams & Flynn, and the plaintiffs, that the latter should do certain work, and the company would pay them therefor, and deduct the amount so paid from the sum that would be due to Williams & Flynn on their contract.

That Williams & Flynn had a contract for the construction of the road is conceded, but we do not find that the parties entered into the agreement claimed. The last contract was made early in October, 1888, and the negotiations which led up to it were carried on principally with Flynn; but nothing was said by him, or any one else, which can be said to have carried the idea to the plaintiffs that, in making this contract, Flynn, or Williams & Flynn, were acting in behalf of the railroad company. The plaintiffs entered into this second contract, having knowledge that the former contract was made with Williams & Flynn. The plaintiffs said nothing to anyone as to whom they were making this second contract with, and so far there is nothing to show that the railroad company had anything to do with it. It is of no avail to say that the plaintiffs did not know that Williams & Flynn were principal con-

tractors, as they were bound, at their peril, to know
the capacity in which Williams & Flynn were acting.
We have often held that a subcontractor is bound by
the terms of the contract between his principal and the
owner, and there is no reason why that doctrine should
not apply in a case like this. *Kilbourne v. Jennings*, 38
Iowa, 533; *Jones & M. L. Co. v. Murphy*, 64 Iowa, 165;
*Martin v. Morgan*, 64 Iowa, 270; *Stewart v. Wright*, 52
Iowa, 335.

It matters not what the plaintiffs believed or sup-
posed. The facts established are that Williams &
Flynn were not agents for the railroad company in
making this contract; that they had no authority from
it to act for it; that they did not even assume to act as
such agents, nor had the company held them out as
such to the plaintiffs or others. The plaintiffs had no
right to indulge in suppositions, which were not sup-
ported, as a basis for their claim that they were deal-
ing with the company in making this contract. The
right to a lien arises only when a contract has been
made with the owner. While it is true that under
certain circumstances a contract will be implied, as
where the owner agrees to pay for material furnished,
yet no facts appear in this case which would warrant
us in saying that a contract might be implied. A con-
tract can not, in such a case, be established by the
belief of the plaintiffs; but it must be shown that an
actual contract existed with the railroad company, or
the facts must be established from which it can fairly
be said that a contract may be implied therefrom.
The plaintiffs' recovery is sought on the ground that
they are principal contractors, and they must recover
as such, or not at all. To be principal contractors,
their contract must have been made with the railroad
company. *Templin v. Chicago, B. & P. Railway Co.*,
73 Iowa, 548.

The plaintiffs' claim that they are principal con-

tractors, and that a contract should be implied, is also based on the fact that Fulton, while he was secretary of the company, filled out a blank in the form of a voucher, and delivered it to the plaintiffs, as evidence of the amount of money still due them after they had completed the work. In another division of this opinion, we have shown how Fulton came to use this old blank, which, in form, was the obligation of the company. Fulton, when he filled this blank, was, and for a long time prior thereto had been, in the employ of Williams & Flynn, as a secretary or clerk. Now the claim is that the railroad company is estopped by this act of Fulton from impeaching this voucher. It is said that, although it is shown that Fulton had no express authority to thus bind the railroad company, still it is bound by the act, because, by virtue of his office, he had the power to bind the company.

Now, the company had not, during the plaintiffs' connection with the work, held Fulton out as having any such authority. It did not even know that he had used these blanks. So that the only way that they can be chargeable with his act, if at all, is that he possessed such power by virtue of his office. We are satisfied that Fulton, in filling the voucher, acted for Williams & Flynn; that he never intended to issue a paper which should bind the railroad company. But, whatever his intention may have been, it is clear he could not, under the circumstances disclosed in this case, bind them. We do not think that the secretary of a railroad company, by virtue of his office simply, is clothed with authority to bind his company by signing and attesting a paper which may on its face evidence a liability on the part of the company to a third person.

We need not review the many cases cited. Many of them are not applicable to the facts, as they exist in the case at bar. Thus the case of *St. Louis, I. M. &*

*S. R'y Co. v. Camden Bank*, 47 Ark. 541; 1 S. W.
Rep. 704, was where the officer was authorized to bind
the company, while in the case at bar no authority
was shown.   The rule seems to be as stated by Cook
in his work on Stockholders, etc. (section 716), viz.:
"The president of a corporation has no power to ·buy,
sell or contract for the corporation, nor to control its
property, funds or management.   This is a rule which
prevails everywhere, excepting, possibly, in the state
of Illinois."   But the law in this respect is settled in
this state, in a case where the facts were substantially
as in the case at bar.   It is said that "the president of
a railroad company has no power, by virtue of his
office simply, to let a contract on behalf of the com-
pany for the construction of its road, when the same is
already under contract by the board of directors.''·
*Templin v. Chicago, B. & P. Railway Co.*, 73 Iowa,
548.   That case is decisive of this question, and we
have no desire to depart from the holding there made.
*Griffith v. Chicago, B. & P. Railway Co.*, 74 Iowa, 85.
The company had a contract with Williams & Flynn
to do the very work covered by the voucher which
plaintiffs claim under, and have paid, or arranged to
pay, Williams & Flynn for the same work.   On the
whole case, we reach the conclusion that the plaintiffs
never had either an express or implied contract with
the railroad company, and are not entitled to a lien.

V. The conclusion we have reached renders it
unnecessary for us to consider specially the claim of
Farmers' Loan & Trust Company, or the motions sub-
mitted with the case.

The judgment and decree of the district court are
AFFIRMED.