WOLF & GAINES, Appellants, v. THE DAVENPORT, IOWA & DAKOTA RAILROAD COMPANY, *et al.*

**Principal and Agent: APPARENT AUTHORITY: NOTICE: ESTOPPEL.** The secretary of a railroad had general control of the building of the first two miles. Then the work was all sub-let, to plaintiff's knowledge. After this the secretary continued to superintend the work, pay the men, and use printed blanks and letter heads of the company. He had no express authority to bind the railroad company. *Held*, the secretary had neither actual nor apparent authority to bind the company to pay a sub-contractor if he would refrain from filing his lien. The company is not estopped to deny that notice to the secretary was notice to it.

*Appeal from Scott District Court.*—HON. C. M. WATERMAN, Judge.

WEDNESDAY, JANUARY 16, 1895

The defendants are the Davenport, Iowa & Dakota Railroad Company and the Farmers' Loan & Trust Company of New York. Williams & Flynn were contractors with the defendant railroad company for the construction of its line of road from Davenport some thirty miles to the crossing of the C. N. W. Railway Company. E. Fitzpatrick was a sub-contractor with Williams & Flynn, and the plaintiff firm was a subcontractor under Fitzpatrick. Plaintiff performed labor under said contract, for which there is due the sum of seven thousand thirty-nine dollars and thirteen cents, with interest, since November 19, 1892, for which

it now seeks to establish a lien on defendant company's line of road. To preserve its lien under Fitzpatrick, the statement should have been filed by December 21, 1888. A statement was filed on the twenty-fourth day of January, 1889, and notice thereof given to the defendant company on the twenty-sixth day of January, 1889. The District Court gave a judgment for plaintiff for the amount above stated against the defendant Fitzpatrick, and denied the lien sought by dismissing the petition as to the other defendants for want of equity. The plaintiff appealed.—*Affirmed.*

*Harry J. Cantwell, A. N. Edwards,* and *Heintz & Fisher* for appellant.

*Cook & Dodge* and *Davison & Lane* for appellee Davenport, I. & D. R. Co.

Granger, J.—I. This case is largely controlled by the conclusions in *Blanding v. Railroad Co.,* 88 Iowa, 225, also reported in 55 N. W. Rep. 81. The relations between the railroad company and Williams & Flynn are the same in the two cases, there having been but one contract between those parties. In that case the claim of the plaintiffs was that they had a contract directly with the company, and they claimed a lien by virtue thereof. In this case the claim is not that there was a contract with the company for construction. It is unquestioned that plaintiff's contract was with Fitzpatrick, but it is claimed that after the work was completed, and plaintiff was entitled to file a statement and preserve its lien, the company, through its secretary and agent, H. C. Fulton, requested of plaintiff not to file its lien, and promised that, if it was not filed, the company would pay the amount of its claim; and that, because of such promise, it desisted from filing

the lien; and plaintiff says that, because of the agreement of the company to pay the claim, it became a principal contractor, and hence that it is entitled to a lien. In the *Blanding Case* the attempt to establish the contract with the company was based on evidence as to the conduct and authority of Fulton, who was secretary of the railroad company. It will be seen, also, from the findings in that case, that he was the secretary or clerk for Williams & Flynn; that, as secretary of the railroad company, he had no authority to make contracts for it; and that he was the bookkeeper for Williams & Flynn, and issued vouchers for them. At the time the plaintiff did its work the railroad company was not itself doing any of the work of constructing the line of road, but the entire work had been let and sublet. This fact was known to all classes of contractors. It is a fact in this case, as it was in the *Blanding Case*, that Fulton had no express authority to contract with plaintiff or others for the construction of the road, nor had he such authority, after it was constructed, to bind the company for its payment. But it is said that there was an apparent authority for him to do so that binds the company. The company had supervision of the construction of the first two miles of the line, during which time, as well as afterwards, Fulton was its secretary, and did much or all of its business; and importance is attached to this fact as showing an apparent authority, because, after Williams & Flynn took the work, he continued to pay the men, procured the right of way in the name of the railroad company, appeared to be boss of the work, gave directions to the engineers, and in the business he used blanks and letter heads that had been procured for the use of the railroad company in the construction of the first two miles, and used the same without alteration, and in a way to indicate that he was then acting for the company; and it is said that this was done with such knowledge on the part

of the company that it is estopped to deny that it is bound by his acts. The evidence does not, to us, sustain such a conclusion. It is in this particular very much as it was in the *Blanding Case*, and we need not attempt to add to what is there said as to its sufficiency. This thought, however, is quite significant. It was unmistakably known that the railroad company was not constructing the line directly; that Williams & Flynn were principal contractors, and others subcontractors. It must have been equally well known, or should have been, that Fulton, in so far as the construction of the line was concerned, was acting for Williams & Flynn, for that firm sublet the work upon its own authority, as did also Fitzpatrick, a subcontractor; and it was patent to every person having contracts for construction that the business Fulton was doing was that of Williams & Flynn, and not of the railroad company. The use of the letter heads and blanks is explained in the opinion in the *Blanding Case*, and need not be noticed further, and the reasoning is applicable in this case. The most favorable view of the evidence as to plaintiff is that the conditions as to Fulton were such as to put it on inquiry to know Fulton's authority before omitting to take so important a step for the preservation of its lien. We may further say that we do not find that Fulton ever assumed to bind the company by an agreement that it would pay the claim.

II.   Plaintiff claims that the railroad is liable to it as a subcontractor. In the company's contract with Williams & Flynn, it was to pay to the firm one-half of the aid voted to the company, by the city of Davenport, when the first ten miles of the road were graded, and, in addition ten thousand dollars of its first mortgage bonds, for each mile as graded, bridged, and tied; and six thousand dollars in said bonds for every full mile ironed. Plaintiff's right to a lien, as a subcontractor, is

based on a claim that after it completed its work, and about December 20, 1888, sixty thousand dollars of the aid voted to the company was paid to Williams & Flynn, and that it had given notice of the filing of its claim December 14, 1888. This notice, if ever served, was a letter from plaintiff to Fulton, and its service is not shown by the evidence. It is, however, said by the plaintiff that defendant is "estopped by the representations of H. C. Fulton to allege the want thereof." In our judgment, the payment of the sixty thousand dollars, even with notice, would not authorize a lien, because of the pledge of the particular fund before plaintiff contracted to work. But we understand the estoppel to deny the service of the notice, because of the acts of Fulton, to be based on the same facts relied on to render the company liable because of his apparent authority to act for it, and hence to bind it, under plaintiff's claim to a lien as principal contractor, wherein we hold there was no such apparent authority. This, to our minds, disposes of the questions in the case, and the judgment is *affirmed.*