GEO. W. PARKER, Appellant, v. D. H. SCOTT *et al.*, Appellants.

1. **Mechanic's Lien:** CONTRACT: PERFORMANCE. L. contracted with S. for the erection of two spires upon a church building, agreeing to pay him a sum named, two-thirds of which was to be paid in monthly installments. After one of such installments was paid, and when one of the spires was nearly completed, it was blown down by the wind through the negligence of S. in not properly protecting the unfinished framework of the structure. Thereupon S. refused to proceed with the work unless L. agreed to compensate him for the loss sustained by the fall of the spire, and L. had the work completed by another. *Held*, that S. was not entitled to a mechanic's lien upon the property, either for the amount of his contract, nor for the value of the work performed before it was destroyed.

2. ——: ——: ——: RIGHTS OF SUBCONTRACTORS. L. having had no knowledge of any claims for liens by subcontractors at the time of the payment of said monthly installment, and the work for which said sum was paid having been destroyed without the fault of L.; *held*, that the subcontractors were not entitled to liens upon the building for the value of the work performed by them on said spire under the employment of S.

3.　Contract: NON-PERFORMANCE : DAMAGES. L. having been able to get the spires erected for substantially the same price agreed to be paid to S., and the building not being injured by the falling spire, *held*, that L. was not entitled to recover damages of S. for the non-performance of his contract.

*Appeal from Clinton District Court.*—HON. A. HOWATT, Judge.

SATURDAY, FEBRUARY 7, 1891.

THIS is an action in equity by the plaintiff to establish and enforce a subcontractor's lien upon certain real estate and building. There were cross-petitions filed by other alleged subcontractors, and by D. H. Scott, the principal contractor. The structure against which the liens were claimed was two spires which said Scott contracted to erect upon a church building. The contract was in writing, and was entered into by Patrick Leahy, the officiating priest of the parish, with said Scott. The cause was tried upon its merits, and the court found that nothing was due to Scott, the principal contractor, and that the subcontractors were not entitled to a lien on the property. Scott, the principal contractor, and the subcontractors appeal. The court also held that Leahy, the priest who made the contract with Scott, was not entitled to recover from Scott, the contractor, for his alleged failure to complete the spires upon the building, and Leahy appeals.—*Affirmed*.

*S. C. Scott* and *Robert T. T. Spence*, for the contractors, appellants.

*E. C. Walsh* and *C. W. Chase*, for the cross-appellants.

ROTHROCK, J.—I. The questions necessary to be determined to settle the rights of the parties appear to

1. MECHANIC'S lien: contract: performance.

us to be few and easy of solution, in view of the evidence in the case. It is not necessary to set out the pleadings at length. It will be sufficient to state in a general way the claims of the

respective parties ; and in the first place it is important to state the subject-matter of the controversy.

It appears that the church building was constructed of stone, and completed, except that wooden spires were to be erected. The walls of the towers were built of stone up to where the spires were to be placed thereon, and left in that condition until Scott undertook to erect the wooden spires in question. The written contract for the erection of the spires was entered into on the twenty-fourth of May, 1887, by which Scott bound himself to erect two spires upon the church according to plans and specifications made by one Hyde, an architect. The work was to be done in a good and substantial manner, to the satisfaction and under the direction of one Rice, who was a superintendent of construction. Scott was to perform all the labor, and furnish all the materials, and complete the work on or before September 1, 1887. It was agreed that Leahy was to pay to Scott the sum of eighteen hundred dollars as final compensation for the building of the spires. Sixty-six per cent. of this sum was to be paid on monthly estimates made by the superintendent, and thirty-three per cent. was to be retained by Leahy as security for the faithful performance of the contract by Scott. The work was commenced, and on the ninth day of June, 1887, the sum of two hundred and ninety dollars was paid by Leahy to Scott upon a certificate given by Rice, the superintendent. On the nineteenth day of the same month, when the whole work was somewhat more than half done, the larger of the two spires being then about three-fourths completed, nothing having been done on the smaller one, the spire in course of construction was blown down by the wind, and practically destroyed. No injury or damage was done to the building by this disaster. The stone walls upon which the spire was erected were left just as they were before the work was undertaken. The upright timbers in the spire were broken, and the whole structure was a mass of *debris* upon the ground. Negotiations were had between the parties, looking to a resumption of the work, and a change of the plan of

the spires was discussed, but no conclusion was reached, and Scott did nothing further in the way of completing his contract. After the time had expired for the completion of the contract, Leahy employed another contractor, and the spires were erected upon a different plan than that first adopted, and at a cost of two thousand dollars.

The testimony of the witnesses relating to the acts and declarations of the parties after the unfinished spire was blown down, and as to whether the disaster was the fault of the plan, or of Scott's negligence, is quite voluminous. We are not accustomed to set out the testimony of the witnesses upon questions of this kind. It is enough that we give our conclusions as to the ultimate facts established by the evidence. It appears quite satisfactorily from the evidence that the structure was not blown down because the plans of the architect were defective. On the contrary, the plans were such that if the spire had been completed it would have been sufficiently strong to resist the ordinary wind storms. The spire was destroyed because it was not sufficiently braced and protected against the wind. This was not the fault of the superintendent, nor of the plans and specifications. It was caused by the negligence of Scott in not properly protecting the unfinished framework of the structure by braces, guy-ropes or otherwise. It was Scott's duty, under the written contract, to complete the spires; and if he met with any mishap by reason of his own negligence, he had no right to demand additional compensation by reason of the loss occasioned thereby; and Leahy did no act by which Scott was prevented from resuming the work, and completing the contract. There is a large amount of evidence upon this question; it covers all of the negotiations above mentioned as to the change of plans; but, it is apparent from the testimony that, from first to last, Scott was unwilling to complete the contract without some compensation for the loss occasioned by the fall of the spire. He did not offer to go on and complete his contract as he made it; and neither Leahy, nor no

one of his agents, nor those acting for him, prevented Scott from resuming the work. On the contrary, after negotiations had ceased, Scott was notified, and directed to take up the work, and complete it according to the original plans and specifications.

These being the material facts as we find them from the evidence, it is very evident that Scott ought not to have any recovery for the work and labor and materials used in the construction of the spire. It is not like ordinary improvements or additions put upon buildings, such as repairs in re-roofing, plastering, adding porches or the like, and the building and repairs are all destroyed by fire before the repairs are completed. It is true, the spires were an addition to the building, and yet they were just as much independent structures as if the parties had contracted for the construction of a wooden or frame dwelling upon a stone foundation provided by the owner of the land. If, in such case, the contractor should fail to properly brace and stay the frame, and commenced finishing the structure from the top, as was done in the case at bar, and it should be blown down, he would have no right to abandon his contract, and maintain an action against the owner; and it is entirely immaterial when, or in what installments, the work is to be paid for. It seems to us that the principle we have announced is one of the fundamental rules of the law of contracts, and ought not to demand authority for its support; but see *Fildew v. Besley*, 42 Mich. 100; 3 Amer. & Eng. Enc. Law, 900, 901, and cases cited in notes; *Commercial Fire Ins. Co. v. Ins. Co.*, 81 Ala. 320; 42 Alb. Law J. 498.

Counsel for Scott claim that recovery may be had for the value of the work and labor and materials upon the ground that when a party performs a contract in part he may recover the reasonable value of his work, with the right of the employer to recoup by the amount of damages sustained by reason of the failure of the plaintiff to fully perform. This has been the law of this state, as announced by this court, for many years. *Pixler v. Nichols*, 8 Iowa, 106. But the principle has

no application to the facts in this case.    The part per-
formance claimed was of no benefit to Leahy.    He never
accepted the unfinished spire, and, as it lay upon the
ground in ruins, it had no value as a spire.

   II.    It is further claimed that the subcontractors
are entitled to have their claims established as liens
against the building.    It is sufficient to say,
in answer to this position, that the subcon-
tractors must be held in some sense to rely
upon the good faith of the principal contractor in going
forward with the work.    Leahy paid Scott two hundred
and ninety dollars on the ninth day of June.    He was
bound to make monthly payments, and had the right
to pay according to the terms of his contract.    At the
time he made this payment he had no knowledge of
any claims for liens by subcontractors; and the subcon-
tractors have now no equitable ground upon which to
establish a lien, because the consideration for the pay-
ment of the two hundred and ninety dollars has wholly
failed.    As the result of the failure to construct the
spires, Leahy never became liable to Scott; and, if there
was no such liability, he cannot be held liable to the
subcontractors in any manner.    Where a subcontractor
undertakes to enforce a lien against the owner, he
should show such indebtedness on the part of the
owner to the contractor, either at the time the subcon-
tractor's account commenced, or later, as will justify a
court in decreeing a lien.    *Martin v. Morgan*, 64 Iowa,
270.

   III.    It is claimed in behalf of Leahy, on his appeal,
that the court should have rendered judgment in his
favor for the two hundred and ninety dol-
lars paid on the contract, and for damages
for the failure of Scott to complete his
contract.    We do not find that Leahy really sustained
any damages.    It does not appear that the spires he
afterwards had erected were not more valuable than
those Scott contracted to build.    It is true, they were
more expensive.    They were on a different plan, and it
is fair to infer they were more valuable.    As to the two

2. ——: ——: ——:
   rights of sub-
   contractors.

3. CONTRACT:
   non-perform-
   ance: dam-
   ages.

hundred-and-ninety-dollar payment, we think, in view of the offers made to Scott while negotiating in the matter of constructing a different style of spires, and the delay occasioned thereby, there is no real ground for rendering a judgment against Scott for that amount.

It does not appear that any cost was made because of the appeal by Leahy, and the costs in this court will be taxed to Scott and the subcontractors. The decree of the district court will be AFFIRMED.