JOHN EPENETER, Appellant, v. MONTGOMERY COUNTY, *et al.*, Defendants, Appellants.

**Mechanic's Lien:** SUB-CONTRACTOR. A property owner may make any legal contract he sees fit with another for the construction of a building on his property, with any provision as to the time and manner of payment, and may comply with it in all respects without being liable to sub-contractors who have furnished labor and material which have gone into the building, and for which they have not been paid, even though he has knowledge of that fact, unless by the terms of his contract he has reserved the right to discharge the claims of sub-contractors from the fund due to the principal contractor.

SAME. A sub-contractor is bound by the terms of his principal's contract with the owner, and as against the latter acquires no right to compensation for labor furnished, except as provided for therein.

LIEN STATEMENT. A notice of lien given by a sub-contractor who furnishes labor and material used in the construction of a county court house stating that the "affiant hereby claims a mechanic's lien against such county," and the funds set apart for the erection of such court house, is not invalid because he claims a lien upon the *fund*, which is something upon which no lien is given by statute.

| 98 | 159 |
| 105 | 268 |
| 98 | 159 |
| 106 | 156 |
| 98 | 159 |
| 107 | 592 |
| 98 | 159 |
| L111 | 276 |
| 98 | 159 |
| 112 | 124 |
| 98 | 159 |
| 121 | 667 |
| 98 | 159 |
| 125 | 234 |
| f125 | 286 |
| 125 | 287 |
| 125 | 288 |
| f126 | 621 |
| 98 | 159 |
| 132 | 286 |

CONSTRUCTION OF CONTRACT. *Sub-contractor.* Acts Twentieth General Assembly, chapter 179, provides that sub-contractors furnishing labor or materials for a public building shall have a claim for the value thereof, "in an amount not in excess of the contract price" of the building; and a contract for the erection of a county building provided for payments on the price at stated times, of 90 per cent., on estimates of the superintending architect, and for payment of the remaining 10 per cent., on the completion and acceptance of the entire work, "and as soon thereafter as the party of the second part (the county) is assured against the existence of any mechanic's liens on said building," and provided that if the contractors failed to complete the building within the contract time, the county should complete it at their expense and deduct from any sum due on the contract the value of work or material furnished thereafter. *Held*, that the county after having finished the work on default of the contractors at a cost, including prior payments properly made on the contract, greater than the contract price, was not liable to sub-contractors on the theory that it had contracted to reserve the fund of 10 per cent. for their benefit.

*Same.* The owner of a building whose contract with the principal contractor for its erection, provides for payments at stated intervals and does not reserve the right to discharge claims of sub-contractor from the fund otherwise due the principal contractor, is entitled to make payments according to the contract, without liability to sub-contractors, though he knew that they had been furnishing labor and materials, and had not been paid therefor by the contractor.

*Same.* Sub-contractors who furnished labor and materials with the knowledge of the owner cannot complain that he paid the contractor in advance of the estimates, under a contract providing for payment of a certain per cent. monthly on estimates of the superintending architect, where it appears that the contractor was not paid more than a percentage covering the work actually done, and that, on his default in completing the work, the owner finished it, at a total cost greater than the contract price.

*Appeal from Montgomery District Court.*—HON. N. W. MACY, Judge.

WEDNESDAY, MAY 13, 1896.

THE defendant, Montgomery county, having been duly authorized by law, by the electors of said county, did, through its board of supervisors, proceed to erect

a court house in the city of Red Oak, in said county. Plans and specifications prepared by H. C. Koch & Co., architects, of Milwaukee, Wis., were selected, and said firm employed as the architects of the building. The contract for the erection of said building was awarded to the defendants, Richards & Co., a firm composed of James Richards and G. I. Leveille, of Omaha, Neb. The contract provided that Richards & Co. should furnish all of the materials and do all of the labor necessary for the completion of said building, in a good and workman-like manner, in accordance with the drawings and specifications made by said architects, who were to be the superintendents of said work, and to complete said building ready for occupancy by May 1, 1891. For this work the defendant county agreed to pay sixty-nine thousand two hundred dollars, to be paid "upon certain estimates of the superintendent, payable the first Tuesday of every month, of the proportionate value of work done upon the building, and of the materials wrought into the construction of the same, less ten per cent. of the amount of each estimate, but all floor beams to be estimated when delivered upon said grounds, less twenty-five per cent. of the estimate therefor; fifteen per cent. when the beams are laid, the remaining percentage, together with all sums due on this contract, on the completion and acceptance of the entire work, and as soon thereafter as the party of the second part is assured against the existence of any mechanics' liens on said building." The contract also provided "that, in case the parties of the first part shall fail to be ready for acceptance within the time herein limited for the performance thereof, the parties of the first part shall pay to the party of the second part, as liquidated damages for such default, the sum of fifteen dollars for each and every day thereafter, until said contract is fully performed, the amount to be deducted from

any sums due on said contract." Provision was also made for the county's completing the work in case the contractor failed or refused to supply the materials, or to carry on the work. The contractors gave a bond to make good to the county "all damages, expenses, and make good all sums of money that may be incurred by Montgomery county by reason of any defects in material or workmanship in the erection of said building and fixtures, and to pay any and all sums of money that the said Richards & Co. may in any way become liable to pay to Montgomery county by reason of their foregoing contract with said county, or any non-fulfillments thereof." The sureties on said bond were all residents of the state of Nebraska. The contractors, in May, 1890, entered upon the work of construction of said building, and so continued until about July 13, 1891, when they became insolvent, and were unable to proceed with the work. After notice to the contractors, the county assumed control of the work, and completed the building. Soon after the contract was made with Richards & Co., a further contract was made with them by the county, for strengthening the foundation of the building, at an expense of three hundred and sixteen dollars and sixty-seven cents. Richards & Co. were at the same time erecting a building in Red Oak, for a private party, and, in making excavation therefor, had some dirt to sell, which was hauled upon the court house lot, at the agreed cost of ninety-three dollars and fifteen cents. As the work progressed upon the court house, monthly estimates were made by the architects, showing the value of the materials furnished and work done in the preceding month, and the ninety per cent. due Richards & Co. under the contract. Under said estimates and the per cent. due thereunder, the county up to the time Richards & Co. abandoned the contract and work, had paid them the gross sum of fifty-two

thousand, three hundred and seventeen dollars and two cents. These payments included the amount due from the county for the dirt mentioned, also for strengthening the walls. Therefore, the contractors had in said time received from the county, on their contract, the sum of fifty-one thousand, nine hundred and seven dollars and fifty cents, which deducted from the contract price, sixty-nine thousand, two hundred dollars, left the sum of seventeen thousand, two hundred and ninety-two dollars and fifty cents, which would have been due Richards & Co. had they completed their contract. The amount paid by the county to complete said building in accordance with the plans and specifications exceeded the seventeen thousand, two hundred and ninety-two dollars and fifty cents, so that there was a sum due the county from Richards & Co., and, in addition thereto, a claim against them for some four thousand five hundred dollars, as damages for a failure to complete the building within the time agreed upon. Plaintiff, Epeneter, a sub-contractor under Richards & Co., had, prior to the time the contractors abandoned the work, furnished material and labor for said building of the value of two thousand and thirty-nine dollars; and, within thirty days from the furnishing of the last labor and material, he filed with the county auditor of said county, an itemized statement of his claim, verified, in which he says he "now makes his claim, and now files his claim, against said public corporation, to-wit, Montgomery county, Iowa, and claims a lien against said Montgomery county for said sums, under and by virtue of the laws of the Twentieth General Assembly of the state of Iowa (chapter 179)." Eugene J. Refregier was also a sub-contractor under Richards & Co., and furnished labor and material for said building prior to the time the contractors abandoned work on the same, in the sum

of two thousand three hundred and fifty dollars, which was due and unpaid, and for which he filed his claim with said county auditor more than thirty days after the last item of material was furnished and last labor done. In this verified claim he "claims a mechanics lien against said Montgomery county, Iowa, and the funds set apart for the erection of said court house." This claim was assigned to plaintiff. The Green Bay Lumber Company, under a verbal contract with Richards & Co., furnished lumber for said building of the value of three hundred and forty-nine dollars and forty-five cents, before the contractor abandoned the work, for which they filed a verified claim with the county auditor, within thirty days from the time the last item was furnished, and this claim was assigned to plaintiff. The defendants, Welshans & Gibson, also, under a verbal contract with Richards & Co., furnished brick for said building prior to the time the contractors abandoned the work, of the value of two hundred and seven dollars and ninety-seven cents, for which they filed a verified claim with the county auditor within thirty days of the furnishing of the last item, and in this claim they say: "They hereby declare that they have a valid claim against the corporation of Montgomery county, and they claim a mechanics lien against said building, and upon the same, including the land upon which the said building is situated." The county had a man employed as superintendent of the work on the court house, and he knew that plaintiff and his assignors were furnishing materials which were being used in said building. In March, 1891, it is claimed that the board of supervisors of said county were notified that plaintiff and his assignors were furnishing material which was being used in said building, and that the same was not paid for. February 9, 1891, Richards & Co. executed to the county a bond

conditioned for the payment of "any and all sums found to be due to said Northwestern Terra Cotta Company, and any and all sums found due from said Richards & Co., to any and all persons for material furnished, or for work and labor done, and to be done, for which any of said persons have now, or may hereafter have, a right to file a mechanic's lien against said public corporation, Montgomery county, Iowa." This bond was filed by the county treasurer, and was approved as to said terra cotta company and Carnegie, Phipp & Co., and rejected as to all other claimants. Fourteen estimates were made on the work, the first dated June 3, 1890. Ninety per cent. was paid upon the amount of each and every estimate, and, except as otherwise stated, said per cent. was in all cases paid after the estimate was made, and in all respects in accordance with the terms of the contract. On estimate No. 4, one thousand dollars was paid a few days prior to the date the estimate was in fact made. On estimate No. 6, of date November 3, 1890, five hundred dollars was paid October 25, preceding. On estimate No. 7, of date December 1, 1890, five hundred dollars was paid November 22, preceding. Five hundred dollars of estimate No. 8 was paid in advance of the making of the estimate. Three hundred dollars of estimate No. 14 was paid in advance of the estimate. The cause was tried to the court, and decrees were entered against Richards & Co. for the amounts due plaintiff and his assignors, also for the amount due Welshans & Gibson. The petitions of plaintiff and of the cross-petitioners were dismissed, and a decree rendered against then for costs, and they appeal.—*Affirmed.*

*A. A. McClanahan* and *D. M. Reynolds* for appellants.

*Edward Mills,* county attorney, *J. M. Junkin,* and *Smith McPherson* for appellee,

KINNE, J.—I.   As to the claim of Welshans & Gibson, appellee contends that these defendants have served no notice of appeal.  This contention is well founded.  They presented their claim to the court below, by way of a cross-petition.  The only notice of appeal is given by the plaintiff.  While it is true that counsel appearing for the plaintiff, also appeared in the lower court for said cross-petitioners, that fact does not relieve said cross-petitioners from serving notice of an appeal from the decree of the court below in case they desired to question its correctness in this court.  Not having done so, they are concluded by that decree, and their case cannot be considered.

II.   It is contended by appellants that Refregier's claim is not valid, because not in form in compliance with the statute.   In that part of the affidavit making the claim, this language is used:   "That affiant hereby claims a mechanic's lien against said Montgomery county, Iowa, and the funds set apart for the erection of said court house, for the sum of two thousand three hundred and fifty dollars, with interest thereon from the sixth day of July, 1891."   It is insisted that the statute gives no right to a lien, either upon the property or the fund, and, having asked for that to which he was not entitled under the law, the claim cannot be recognized as being in compliance with the statute.   The requirements of the statute are that, within thirty days from the time the last material was furnished or the last labor done, the claimant must file with the proper officer, an itemized and sworn statement of his demand.  Acts Twentieth General Assembly, Chapter 179.   This he did.   More was not required of him, and he was not called upon to claim a lien as against either the property or the fund; and, by so doing, he effected

nothing.   Having complied with the statute, the fact that he claimed a lien which the statute did not give, is not fatal to his recovery.   When the proper statement was filed in time, and duly verified, the statute fixed the extent of his remedy.   The case is unlike *McGillivray v. District Township*, 96 Iowa, 629 (65 N. W. Rep. 974), and cases there cited, where the absolute requirements of the law were not complied with.   In form, the claim was sufficient.

III.   In the title of chapter 179, Acts Twentieth General Assembly, and within brackets, appear these words:   "Additional to ch. 100 of the Acts of the 16th General Assembly."   Chapter 100, thus referred to, relates to mechanics' liens.   Appellee contends that the enrolled bill does not contain the words quoted, and that we should not consider them; that the act is in no way additional to, or amendatory of the mechanics' lien statutes, but is an independent statute, giving relief only to sub-contractors, and should be construed without regard to said mechanic's lien laws.   In the view we take of the case, it is not material to now determine whether or not this statute is to be construed with reference to the mechanic's lien statutes or not.   If, as appellants contend, it is thus to be construed, we do not think appellants can recover in this case.   The fact that in a few instances, the county paid the contractor a sum in advance of the time when the estimate was, in fact, made, is no ground for holding the county liable to plaintiff, as in every case such sum so paid was deducted from the ninety per cent. due, as shown by the estimate next following, and it is impossible to discover how this worked any prejudice to plaintiff, as the total sums, in fact paid, were all due the contractor by the very terms of the contract.

Now, unless the fact that the defendant county had knowledge of the furnishing of labor and material

by plaintiff and his assignors, which was not paid for, would preclude said defendant from paying in accordance with its contract, the payment of these sums in advance of the actual estimate would furnish no ground of complaint to plaintiff and his assignors. The county never paid to the contractor more than the ninety per cent. of the estimate. In the completion of the building, it expended a sum greater than the amount which would still have been due the contractors (including the ten per cent. withheld on estimates made), had they completed the entire work in accordance with the contract. This, under the terms of the contract, heretofore referred to, it had a clear right to do. So that, instead of there being any sum due the contractor, he is indebted to the county. The act under which recovery is sought in this case clearly contemplates that the county shall not be required to pay in any event a sum in excess of the contract price. It provides: "Shall have a valid claim against the public corporation constructing such building, * * * for the value of such services and material, *in an amount not in excess of the contract price to be paid for the building. * * * Nor shall any such corporation be required to pay any such claim at any time before, or in any manner different, from that provided in the principal contract.*"

In nearly all of the cases in this state, decided under the general mechanic's lien law, wherein the the owner has been held liable to a sub-contractor who filed his lien and served the statutory notice within the time required, such liability has been based upon one or both of the following grounds: *First*, that the contract between the owner of the building and the principal contractor gave the owner the right to pay the claims of sub-contractors, and deduct the sum so paid from the amount due the contractor; *second*, that the contract

between the owner and the principal contractor did not call for payments from the owner to the principal contractor at certain fixed times, and in certain specified amounts. The doctrine that one has a right to pay in accordance with the terms of his contract was recognized as early as the case of *Kilbourne v. Jennings*, 38 Iowa, 533. And see *Stewart v. Wright*, 52 Iowa, 355 (3 N. W. Rep. 144). In that case it is said: "The single question to be determined upon the demurrer was whether the payments, made in good faith, without notice, and in strict accord with the contract, protect the defendant from again paying to the sub-contractors the amounts of their respective liens. This question was undoubtedly correctly determined by the court below. Any other rule, followed to its logical conclusion, would effectually prevent a person from complying with a contract which all the world must admit he has a right to make and perform. * * * Counsel for appellant argue this case upon the theory that the sub-contractor is not bound to take notice of the terms of the contract between the owner and the principal contractor. The argument seems to be that the owner must act at his peril, and cannot make payments according to the terms of his contract, without making inquiry as to whether there may not be sub-contractors who may thereafter file liens and give him notice. But this last clause of section 7, above quoted, charges sub-contractors with notice of the terms of the contract." In the same case it is said that the statute "recognizes contracts as binding, and does not alter their terms, much less provide that a man may not pay his contractor in advance, if he so agrees." This case is followed in *Roland v. Railway Co.*, 61 Iowa, 380 (16 N. W. Rep. 355). In *Lumber Co. v. Osborn*, 72 Iowa, 474 (34 N. W. Rep. 215), it is said: "It will be observed that the payments were made in strict accord with the contract,

and prior to the filing of the lien, or service on the defendant of a notice that a lien was claimed. This being so, the defendant is not liable to any greater extent than the amount for which judgment was rendered, unless he had knowledge, or was bound to know that the plaintiff had furnished materials which were used in the construction of the building." The case then discusses the question of the defendant's knowledge. It appeared that he knew that his contractor obtained the lumber of others, but did not know from whom; and it was held that he was not bound to institute an inquiry as to who had furnished the lumber. It is then said: "The defendant was bound to pay in accordance with the contract. If he failed to do so, he would have become liable for all damages sustained thereby by the contractors, who could possibly have abandoned the job for this reason earlier than they did. It is exceedingly doubtful if the defendant could have excused himself from paying in accordance with the contract, by claiming that the lumber was not paid for, and that he might become liable to sub-contractors, when there was no provision in the contract authorizing him to protect himself against mechanics' liens." In *Parker v. Scott*, 82 Iowa, 271 (47 N. W. Rep. 1073), in speaking of the owner, it is said: "He was bound to make monthly payments, and had the right to pay according to the terms of his contract." In *Merritt v. Hopkins*, 96 Iowa, 652 (65 N. W. Rep. 1015), the right to pay in accordance with the terms of the contract is recognized. The court says: "It is to be remembered that this case does not come within that class of cases in which it was held that the owner may pay the contractor according to the strict terms of his contract." The following are of the other class of cases where we have held the owner liable: *Winter v. Hudson*, 54 Iowa, 336 (6 N. W. Rep. 541); *Gilchrist v. Anderson*, 59 Iowa, 275 (13

N. W. Rep. 290); *Fay v. Orison*, 60 Iowa, 136 (14 N. W. Rep. 213); *Andrews v. Burdick*, 62 Iowa, 718 (16 N. W. Rep. 275); *Martin v. Morgan*, 64 Iowa, 272 (20 N. W. Rep. 184); *Othmer v. Clifton*, 69 Iowa, 656 (29 N. W. Rep. 767); *Lumber Co. v. Woodside*, 71 Iowa, 360 (32 N. W. Rep. 381); *Hug v. Hintrager*, 80 Iowa, 364 (45 N. W. Rep. 1035). Now, the doctrine that a sub-contractor is bound by the terms of the contract between his principal and the owner, has always been held in this state. *Kilbourne v. Jennings*, 38 Iowa, 533; *Jones & M. L. Co. v. Murphy*, 64 Iowa, 165 (19 N. W. Rep. 898); *Martin v. Morgan*, 64 Iowa, 270 (20 N. W. Rep. 184); *Stewart v. Wright*, 52 Iowa, 335 (3 N. W. Rep. 144); *Blanding v. Railroad Co.*, 88 Iowa, 233 (55 N. W. Rep. 81).

From the holding in these cases, it is clear that the obligation of a sub-contractor to take notice of the terms and conditions of the contract between his principal and the owner, makes said contract binding upon the sub-contractor, as to its terms and times of payment. Such being the fact, if, notwithstanding such obligation, the sub-contractor may recover from the owner who has paid the contractor in accordance with the terms of the contract, and prior to the time said sub-contractor might file his claim for a lien, and serve his notice on the owner, then the sub-contractor is, in effect, avoiding the obligation imposed on him by the principal contract. We do not think such should be the construction of the law. If the sub-contractor is bound by the terms of the original contract, if, when he enters into contractual relations with the principal contractor, he must take notice of, and be governed by, the provisions of his principal's contract with the owner, of which there can be no doubt, then such sub-contractor must be held to assent to the payment to the contractor, in accordance with the terms of the contract, and he cannot, thereafter, be heard to say that, as to him, such

payments were not properly made; and the fact that in such a case the owner may know that sub-contractors have furnished labor or material for the building, which has not been paid for, constitutes no reason for his withholding payments from the principal contractor, which are due by the terms of the contract, in the absence of a provision therein, permitting such owner to pay sub-contractors out of the funds due the principal contractor. In other words, we hold that, the owner may make such a contract as he sees fit, so long as it is legal, and may make any provisions as to the time and manner of payment he chooses, and such contract he has the absolute right to comply with, in all respects, regardless of his knowledge of sub-contractors, and that they have furnished labor or material which has gone into said building, and has not been paid for, unless he has, by the terms of his contract, reserved the right to discharge the claims of sub-contractors from the fund which would otherwise be due to the principal contractor. If this be not so, then the right to contract, without let or hindrance, so long as the thing contracted to be done is legal, is a barren right,—is a right to be exercised only subject to the will of the legislature, which may ingraft upon the contract of parties, obligations to third parties (sub-contractors), which said contracting parties never dreamed of. In our judgment, the legislature has no such power of interference with the right of private contract; and it cannot thus create obligations against one party, and in favor of another, in plain violation of the contract. This view, we think, is the proper and just one as to the meaning and effect of the mechanic's lien law when applied to a case where the facts are like those in the record before us. We are aware that this is a step in advance of former holdings, where the question of the knowledge of the owner

as to sub-contractors and their claims has been deemed material. As we have said, such knowledge is immaterial when the contract provides as to the times payments shall be made thereunder, and they are so made, and there is no provision in the contract for the owners using money due the contractor in discharging his obligations to the sub-contractors. We therefore hold that the defendant county had the right to pay the contractors in accordance with the terms of the contract, regardless of sub-contractors or their claims. This holding is also in accord with the provision of the section heretofore set out from the chapter giving a remedy to sub-contractors, as against public corporations, for labor done or material furnished for buildings erected by such corporation.

IV. Claim is made that the county, in its contract with Richards & Co. recognized the fact that there would be sub-contractors, and the following provision is relied upon: "The remaining percentage, together with all other sums due on this contract on the completion and acceptance of the entire contract, and as soon thereafter as the party of the second part is assured against the existence of any mechanic's lien on said buildings." It appears from the amended abstract, which is not denied, that all that part of the contract relating to mechanics' liens was in print; that a printed form was used; and appellee contends such provisions are not to be given force and effect, because inconsistent with the written provisions of the contract, and because no lien is allowed by statute. We need not discuss that claim. The contract must be construed in all its parts, and, when this is done, we do not think there is any ground for claiming that, by this provision, any duty was enjoined upon the county to hold that ten per cent. for the benefit of sub-contractors. The contract also provided

that, in case the contractors should fail to complete the building, the county should have the right to do so at the contractor's expense, and "in such a case the expense of all materials and the cost of all work so provided by said party of the second part, shall be deducted from any sums due on said contract, and, in case of any deficiency, the parties of the first part shall, on demand, pay the same to said party of the second part." Under this authority, the county proceeded to complete the building, and, in so doing, expended more than was due said contractors, and more than would have been due them had they themselves completed the work according to their contract. This provision of the contract was as binding upon these sub-contractors as was the provision heretofore considered. They were bound to know when they entered into contract relations with Richards & Co., touching the work, that such a contingency might happen, and, if it did, that the county had a right to consume the ten per cent. reserved in the completion of said building, if necessary. These provisions also related to the matter of payment under the contract, in certain contingencies. Viewing the entire contract, we do not discover that the county was under any obligations to sub-contractors to set apart this fund of ten per cent. for their benefit, and then go on and complete the building at a cost including what the county had already properly paid, exceeding the entire contract price, and thereby be compelled to pay an amount in excess of the contract price. Acts Twentieth General Assembly, Chapter 179. The county made no agreement in its contract to pay sub-contractors, and charge the sums so paid, up to Richards & Co.; nor did it reserve the right so to do.

V. Claim is made, that the county must have had notice that there were sub-contractors as early as

February 9, 1891, as at that date Richards & Co. filed a bond with the treasurer of the county to procure the release of .the claim filed by the terra cotta company, and to protect all other persons who might thereafter be entitled to file claims against the county for labor done, or materials furnished for said building, under Richards & Co. But we have held that the county had a right to pay in accordance with the terms of the contract, and to complete the building, and charge the costs thereof against any sums due Richards & Co., regardless of the claims of sub-contractors, which may have been known to the county.

We have considered every question raised, which seems to us material, in view of the conclusions we have reached, and are content with the decree entered by the district court; and it is AFFIRMED.