SWEARINGEN LUMBER COMPANY, Appellant, v. WASHINGTON SCHOOL TOWNSHIP OF GREEN COUNTY, IOWA, and J. O. FRIZELLE, Appellees.

**Public corporations:** GARNISHMENT: CLAIMS OF SUBCONTRACTORS.
1 The garnishment of funds in the hands of a public corporation due a contractor for the construction of a school house, which is made prior to service of notice of a claim due from the contractor for material, as provided in Code, section 3102, is a good defense to a suit by the material men to recover the sum so garnished.

**Same.** Under the terms of the contract, it is held that the fact that
2 a subcontractor's claim for materials furnished for a school house was outstanding and might be reduced to a personal obligation of the district under Code, section 3102, did not operate to postpone maturity of the district debt to the contractor, so as to prevent garnishment of the district by a creditor of the principal contractor.

**Priority of liens.** Code, section 3095, relative to priority between
3 mechanic's liens and garnishments, has no application to the claim of a subcontractor against a public corporation, so as to give him

.priority over a garnishment to which the corporation has answered prior to notice as provided by Code, section 3102.

**School districts:** GARNISHMENT: NOTICE. The obligation of a school
4   district to notify a subcontractor that it has been garnished at the suit of a creditor of the principal contractor, is removed where the subcontractor has knowledge of the garnishment and intervenes in the action.

*Appeal from Greene District Court.*— HON. Z. A. CHURCH, Judge.

FRIDAY, OCTOBER 21, 1904.

THE opinion states the case.— *Affirmed*

*Wilson & Albert* and *Shortley & Harpel,* for appellant.

*Cardell & Fahey* and *I. D. & R. G. Howard.* for appellee.

WEAVER, J.— The petition alleges that the defendant school township let to one J. O. Frizelle a contract for the construction of a schoolhouse, that plaintiff as subcontractor furnished to Frizelle the lumber and materials for said building, and that upon the debt thus arising there is due and owing to the plaintiff a balance of $452.75. It is also alleged that after furnishing said lumber and materials to Frizelle, and within thirty days after delivering the last item thereof, plaintiff presented to said school district, and filed with the proper officer thereof, an itemized and sworn statement of said claim. It is further alleged that, at the time of the furnishing of said materials and the presentation of said claim, there was due and owing from the district township to said Frizelle, as a balance upon the contract price for said schoolhouse, the sum of $385.65, and that said sum is still due and unpaid. Upon these allegations plaintiff demands judgment against said school township for the amount so alleged to be in its hands and unpaid to said contractor.

Answering this claim, the defendant admits having let the contract to Frizelle for the construction of a schoolhouse, as alleged, for the sum of $684.50, to be paid $300 when the foundation of the house was finished, and the remaining sum of $384.50 when the house was completed and delivered according to contract. It is alleged that on July 1, 1902, the first installment of $300 became due, and was then fully paid, and that upon July 25, 1902, the building was fully completed and accepted, and that the remaining installment of $384.50 thereupon became due and payable. It is further alleged that on said day, and after said balance became due and payable to Frizelle, and before the district township had any notice or knowledge of the plaintiff's claim, said defendant was garnished, as the debtor of Frizelle, at the suit of one A. M. Hull, before a justice of the peace, and made answer to such garnishment, disclosing the indebtedness as aforesaid. The matter of said garnishment came on for hearing before said justice of the peace on August 6, 1902, and defendant, by its secretary, appeared thereto, filed an answer showing the facts as to the state of its account with Frizelle, and said justice thereupon entered judgment requiring defendant, as garnishee of Frizelle, to pay to said Hull the sum of $89.44 and costs. In obedience to this judgment, defendant has paid the amount of Hull's claim, leaving still in its hands due to Frizelle the sum of $290.10, which it is ready and willing to pay to plaintiff, and tenders judgment accordingly. It is also alleged that, at the time of making its answer to said garnishment, defendant had no notice that plaintiff herein had or claimed any right as subcontractor to the moneys in its hands due to the said Frizelle, and that such answer was made in good faith. It is also admitted by the answer that on August 6, 1902, plaintiff filed with and served upon the president and secretary of the defendant an itemized and sworn statement of its demand, and that on August 20, 1902, a similar statement was served upon the president, secretary, and treas-

urer, but that neither of said notices or statements were served or filed until the defendant's answer as garnishee had been taken as above related. In a second count of its answer the defendant states the history of the case as aforesaid, and further alleges that plaintiff intervened in the garnishment proceedings before the justice of the peace, seeking to establish the priority of its claim on said fund, and that such intervention was dismissed. Thereupon the plaintiff herein appealed from the ruling of the justice of the peace to the district court, by which court the appeal was afterward dismissed. By these rulings and orders it is alleged that the demand presented by plaintiff in the case at bar has already been adjudicated. To each of these counts of the answer plaintiff interposed a demurrer, which was overruled, and from the judgment entered on said demurrer this appeal has been taken.

Assuming, as we must, the truth of the statement of facts contained in the answer, they disclose a good defense to the plaintiff's demand. The right of plaintiff to recover, 1. Public if at all, is based upon Code, section 3102, CORPORATIONS: garnishment; which provides that a subcontractor who fur-claims of subcontractors. nishes materials or labor for the construction of a public building may have a claim therefor against the public corporation for which the building is constructed, " not in excess of the contract price to be paid for such building, nor shall such corporation be required to pay any such claim before or in any different manner from that provided in the principal contract." In order to have the advantage of this remedy, the claim must be filed with the public officer through whom the payment is to be made, in the form of an itemized sworn statement of the demand, within thirty days after furnishing the last item of materials or labor for which payment is claimed. In *Epeneter v. Montgomery County,* 98 Iowa, 159, we held that a public corporation which has let a contract for a public improvement may pay the contractor according to the terms of the agreement, without in-

curring any liability to subcontractors whose claims are not filed as provided by law before such payment is made. It is a well-settled principle of law that a subcontractor must take notice of the terms of the principal contract, and is bound thereby. See authorities cited in the *Epeneter Case,* 98 Iowa, 171. This case has since been cited and followed in *Iowa Stone Co. v. Crissman,* 112 Iowa, 122; *Beach v. Wakefield,* 107 Iowa, 567; *Green Bay L. Co. v. District,* 121 Iowa, 663.

It is argued herein by the appellant that the case at bar does not come within the rule of these precedents, because it is said the debt was not due from the district to the contractor when the garnishment was made. 2. SAME. We do not so construe the record. The contract provided that the building was to be finished and delivered " free from any lien for work done or material furnished on or before August 15, 1902," and the argument is that, although the building was completed on July 25, 1902, yet, appellant's claim being outstanding and unpaid, the debt to Frizelle was not due or payable until that claim was satisfied. It is admitted that plaintiff's demand was not a lien on the building, but the claim is made that we should interpret this clause of the contract in reference to liens as intended to protect the subcontractor in his statutory right to enforce his demand against the school district. But a construction so forced and violent as this cannot be allowed. The building was completed July 25, 1902. So far as the record shows, there was no lien upon it, and the contractor was entitled to demand, and appellee was privileged, if not indeed bound, to pay the remainder of the contract price.

But it is also insisted that, even if the debt was due, the appellant had thirty days from the date of the last item furnished the contractor in which to present and file its 3. PRIORITY OF claim, and that the attaching creditor could not LIENS. obtain any priority by his garnishment. To this it may be answered that Code, section 3095, as to pri-

ority between garnishments and mechanics' liens, can have
no application to cases like this, where no lien is created
or provided for.    When an enforceable claim arises, under
section 3102, in relation to public corporations or public
buildings, the idea of a lien either upon the building or on
the fund is expressly excluded, and the demand is of a direct
or personal nature against the corporation, which has been
made liable by the compliance of the contractor with the
provisions of the statute, before such corporation has paid
the principal contractor according to the terms of the con-
tract.    *Whitehouse v. American Surety Co.,* 117 Iowa, 328.
The record expressly negatives any knowledge or notice to
the appellee of appellant's claim prior to answering to the
garnishment, and, indeed, there is nothing to indicate that
appellee had any knowledge or notice that appellant had fur-
nished a dollar's worth of the materials in the building; and
we have repeatedly held, even as against mechanics' liens,
that the owner may under such circumstances safely pay the
contractor in full.    In the Epeneter Case, knowledge that
materials were being furnished by the subcontractor was
held not to require the owner to withhold payment from the
principal contractor.    In *Lumber Co. v. Osborn, supra,* we
held that the owner was not bound to go out and seek infor-
mation as to where the materials used in his building were
procured, and in *Iowa Stone Co. v. Crissman, supra,* we said
the subcontractor was bound to know the terms of the prin-
cipal contract, whether written or oral, and, " if the defend-
ant did no more than to comply with the terms thereof in
good faith, and without knowledge, or notice which would
require him to make inquiries, equity and good conscience
will not require him to make a second payment."    As the
record stands in this case, it is conceded that the appellee
had no notice of appellant's claim until August 6, 1902, and
after answer had been made to the garnishment.    It follows
then, under these authorities, that if on July 25th, when
the schoolhouse was completed according to agreement, ap-

pellee had paid the contractor in full, no court of law or equity would enforce a second payment at the suit of the appellant.

This conclusion leaves only the further question whether, after learning of appellant's claim, it was appellee's duty to contest for appellant's benefit the payment of the claim of the garnishing creditor. Without attempting to lay down any rule applicable to all cases, we may assume for the purposes of this case that, had the appellee when garnished been aware that appellant was asserting a claim to the money in its hands, it was the equitable duty of the former to notify the latter, and give it an opportunity to come in and defend its right to the fund. It appears, however, that appellant did have knowledge of the garnishment, and did intervene, claiming to be entitled to receive the entire balance in appellee's hands, and therefore no notice from the appellee was required. With both parties claiming the fund appearing in court, and both fully informed of the exact situation of the account between the appellee and the contractor, we cannot conceive it to have been the duty of the appellee to take up or carry on the contest in favor of either claimant. It stood indifferent between them. It acknowledged its debt to the contractor, and was ready and willing to pay it to the one to whom the court should decide it properly belonged. If appellant's intervention was not properly presented or prosecuted, the appellee is not to be held responsible for the mistake. If the intervention was properly made, and the justice of the peace erred in dismissing it, or if the district court erred in dismissing the appeal, the appellant had its remedy, which for some reason it did not care to invoke. As a result of these proceedings, the judgment against appellee, as garnishee of the contractor, stood unchallenged and in full force, and we think the appellee was justified in paying it, and that appellant's recovery was thereafter correctly limited to the remainder

*4. SCHOOL DISTRICTS: garnishment; notice.*

unpaid on the building contract. There is nothing in the record to suggest that appellee has acted otherwise than in good faith. It has at all times stood ready to perform its contract and pay its debt according to the strict terms of its agreement, and, in the absence of a clear statutory requirement therefor, it should not be held to pay a second time. What we have already said makes it unnecessary for us to decide how far, if at all, the proceeding before the justice of the peace upon the intervention operates as a prior adjudication of appellant's claim.

The demurrer to the answer was properly overruled, and the judgment appealed from is *affirmed*.