WACKERBARTH & BLAMER Co., Appellant, v. THE INDE-
PENDENT SCHOOL DISTRICT OF INDEPENDENCE, IOWA,
JOHN T. BARNETT, Treasurer of said District, GEORGE
A. NETCOTT, W. E. BAIN, Appellees.

School buildings: SUBCONTRACTORS' CLAIMS: FILING OF SAME. Under
1 the statute relating to the filing of claims by subcontractors for
material furnished for the construction of any public building,
bridge or other improvement not belonging to the state, the filing
of a claim with the treasurer of a school district, and service
of notice thereof on the president and secretary of the board,
is in compliance with the provision of the statute requiring that
it shall be filed with the officer through whom payment is to
be made.

Same: INSOLVENCY OF PRINCIPAL CONTRACTOR: EFFECT. While the
2 statute above referred to does not create a lien in favor of a
subcontractor it does offer him an equitable right to the unpaid
funds in the hands of the corporation; and upon compliance with
the statute in filing his claim a personal liability is created against
the corporation, to the extent of the funds in its hands, which
can not be defeated by a general assignment by the principal
contractor for the benefit of creditors, although previously made.

Same: EFFECT OF ASSIGNMENT BY CONTRACTOR. The general assign-
3 ment for the benefit of creditors by a contractor for public work
before its completion, does not amount to an assignment of the
fund for construction of the work in the hands of the corpora-
tion; the assignee takes only a right of action therefor.

Same: STATUTE: PREFERENCE. The statute giving subcontractors a
4 claim against public corporations provides for a preference which
the courts can not ignore, even though distribution of the funds
in the hands of the corporation under a general assignment by
the principal contractor would be more equitable.

*Appeal from Buchanan District Court.*—HON. F. C.
PLATT, Judge.

MONDAY, NOVEMBER 18, 1912.

THE defendant Netcott is a principal contractor, who entered into contract with the defendant school district for the erection of a schoolhouse. The plaintiff is a subcontractor, who furnished Netcott over $6,000 worth of lumber and material for the construction of such public building. As such subcontractor the plaintiff brought this action against the school district under the provisions of section 3102 of the Code; the defendant Netcott being insolvent and having failed to finish the contract. Upon trial in the district court, the plaintiff's petition was dismissed, and it appeals.—*Reversed* and *remanded.*

*Cook & Cook,* for appellant.

*Hasner & Hasner,* for school district and its treasurer.

*Chappell & Todd,* for W. E. Bain, assignee.

EVANS, J.—The case was submitted upon an agreed statement of facts. Only questions of law, therefore, are submitted for our consideration. These questions are two in number: (1) Did the plaintiff comply with the preliminary requirements of section 3102, or did he fail to file his statement of account with the proper officer of the school district? (2) Were the provisions of section 3102 available to the plaintiff after the principal contractor had made a general assignment for the benefit of his creditors?

Section 3102 is as follows:

Public Buildings or Bridges—Claim of Subcontractor. Every mechanic, laborer or other person who, as subcontractor, shall perform labor upon or furnish materials for the construction of any public building, bridge or other improvement not belonging to the state, shall have a claim against the public corporation constructing such building, bridge, or improvement for the value of such services and material, not in excess of the contract price to be paid for such building, bridge or improvement, nor shall such cor-

poration be required to pay any such claim before or in any different manner from that provided in the principal contract. Such claim shall be made by filing with the public officer through whom the payment is to be made an itemized and sworn statement of the demand, within thirty days after the performance of the last labor or the furnishing of the last of the material, and such claims shall have priority in the order which they are filed.

In attempted compliance with the requirements of this section the plaintiff filed an itemized and sworn statement of his account with the treasurer of the school district; and within a few minutes thereafter, and approximately at the same time, he served a written notice of such filing upon the president and secretary of such school district.

1. SCHOOL BUILD-INGS: subcontractors' claims: filing of same.

It is urged by appellee that the treasurer was not the proper officer with whom such statement should have been filed, but that it should have been filed with the secretary as being the officer contemplated by the provisions of the quoted section. This contention is based in part upon the case of *Green Bay Lumber Co. v. Thomas,* 106 Iowa, 420. That was an action against the county. The statement was filed or left with one member of the board of supervisors. We held in that case that it should have been filed with the county auditor. This section of the statute was not at that time identical with its present form. Its requirement then was that the statement should be filed "With the officer *through whose order* the payment is to be made." It will be noted that the statute in its present form requires a filing with the "public officer through whom the *payment* is to be made." It was this provision which led the appellant to make the formal filing with the *treasurer* on the theory that he was the officer through whom payment would be made. It is argued that the change in the statute was intended only to improve its form, and not to change its real meaning, and that its meaning and intent are not there-

by changed. The argument is that the treasurer as a disbursing officer can exercise no responsibility except to pay the warrants drawn upon him, that the warrants must be drawn by the president and secretary, and that such warrants when drawn and delivered constitute payment within the meaning of the statute. The argument is not without its force. - A warrant being once issued and delivered is practically beyond recall or defense; but the fact remains that the treasurer is the officer through whom the payment is made in the literal sense. It is evident, also, that, if the plaintiff had filed its statement with the *secretary* in lieu of the *treasurer* or with the *president* in lieu of either, he could not have escaped the menace of plausible argument against the course adopted. As against the secretary, it could be said that he is not the officer through whom "payment" should be made, and, further, that he is not the officer "through whose order" the payment is to be made. His duties are clerical and are performed under the direction of the board of directors in pursuance only of their official action. The order or warrant, when issued upon the direction of the board, must be signed by the president and the secretary. If it would have been sufficient to file with the *secretary* under the terms of the statute, by the same reasoning it would be sufficient to file the same with the *president*. As urged by appellees, the real purpose of the statute is very plain. It is intended to bring the claim definitely and formally to the attention of the governing officers of the corporation before its liability thereon can attach. We have already noted the fact that the plaintiff not only filed the sworn statement with the *treasurer*, but he immediately served written notice to that effect upon the *president* and the *secretary*. We think that such a course fully met the requirements of the statute and amounted to a filing of the statement with the president, secretary, and treasurer. To hold otherwise would be unduly technical, and would ignore, not only the spirit of the statute, but its

literal letter as well, in that the treasurer is an officer through whom "payment" is made.

II. We turn now to the second question. A few hours prior to the filing of the sworn statement by plaintiff and on the same day, the principal contractor, Netcott, made a general assignment for the benefit of his creditors. The plaintiff filed its claim within the thirty-day period, and complied in all respects with every requirement of the statute. It is agreed that there was in the hands of the school district, due under the contract, at the time of such filing, the net sum of $6,168.57 over and above one prior claim of $97. The question is, can the plaintiff be deprived of the benefits of section 3102 by the mere act of the principal contractor in transferring his claim against the school district to some other person? Does the mere fact that the principal contractor made a general assignment for his creditors prevent the plaintiff from availing himself of this statute thereafter, even though within the statutory period? Our first impressions on the oral argument inclined to the affirmative on this question. Upon further consideration we are convinced that the position is not sound. We have held heretofore that the statute creates no lien in favor of the subcontractor, although it does offer him a certain equitable right. *Whitehouse v. Surety Co.,* 117 Iowa, 328; *Green Bay Lumber Co. v. Independent School District of Odebolt,* 125 Iowa, 227; *Swearingen Lumber Co. v. School District,* 125 Iowa, 283; *Steel Co. v. Van Buren County,* 126 Iowa, 619.

In the *Swearingen* case, *supra,* we held that where the school district was garnished, and answered showing its indebtedness, and was adjudged to pay the claim of the garnishee, it was entitled to credit for the amount so paid, and was liable only for the amount remaining in its hands. And this was held notwithstanding that the subcontractor filed his claim therewith within thirty days. He had not filed his

2. SAME: insolvency of principal contractor: effect.

claim when the school district answered. It was made to appear, also, in that case that the subcontractor intervened in the garnishment action, and that the question of his priority was there litigated. It is contended for appellee that such case is authority to support the ruling of the trial court. We think it falls far short. The statute purports to create a personal liability against the public corporation. It is limited, however, to the amount due under the contract at the time such liability is created. The corporation is not bound to assume that the subcontractor will avail himself of the provisions of this statute. It is not bound to suspend operations while waiting for the expiration of thirty days in favor of any subcontractor. But, when the subcontractor does avail himself of the provisions of this section and does comply with its formal requirements, then a personal liability is created against the public corporation, to the extent of the amount of money then in its hands, preference being given to subcontractors in the order of their filing in pursuance of this statute. If we say that the principal contractor can of his own volition deprive the plaintiff of the benefits of this section by merely making a general assignment for the benefit of his creditors, then we contradict the statute, and we deny to the subcontractor the very preference which the statute offers him. If the principal contractor may thus defeat the subcontractor by making a general assignment for his creditors, by the same logic he may do so by making any *bona fide* assignment to any proper person for a proper consideration. This would be adding an exception to the statute and taking somewhat of substance away from it.

It is argued that by force of the general assignment the fund in the hands of the school district passed immediately into the possession or custody of the 3. SAME: effect of assignment by contractor. assignee. But this contention is not quite accurate. No title to a fund is involved. The school district was debtor to Netcott under the con-

tract. The general assignment carried to the assignee the possession of no fund. The principal contractor had a cause of action against his debtor and nothing more. This cause of action was acquired by the assignee by the general assignment. The right and interest of the school district as debtor was not affected. If the school district had paid to Netcott the full amount due under the contract before the subcontractor had availed himself of the provisions of section 3102, it would have been protected against a second liability under the holding in the *Swearingen* case, *supra*. If it had made such payment to the assignee under the same circumstances, it might perhaps have been protected in like manner. The provisions of the statute guard the public corporation against double liability. But there is no valid reason why it needs any protection to the extent of the amount due from it, and while such amount remains unpaid. If this is so as between it and the principal contractor, we can see no fair reason why it should not be so as between it and the assignee of the contractor. True, the amount due from the school district after the assignment is no longer due to the principal contractor, but to the assignee. But this change does not, under the terms of the statute, operate as a limitation upon the right of the subcontractor. The limitation of the liability imposed by the statute is "not in excess of the contract price to be paid for such building." The contract price and the payments thereon and the balance due form the criterion under the statute, and this regardless of whether the principal contractor has transferred his interest therein or not. The assignee took the cause of action as it was. While it was held by the contractor, it was subject to the contingency that subcontractors had a right to avail themselves of the provisions of the statute at any time before settlement had. The assignee necessarily took the cause of action subject to the same contingency.

It is urged that distribution of this insolvent estate

under the assignment would be more equitable than to permit this creditor to obtain the claimed preference. The

4. SAME: statute: preference.

argument appeals to us, but the statute under consideration expressly provides for preference. Of necessity a statute of preference can never operate equally in a particular case. If there ought to be no preference in such a case, the statute should be repealed. While it continues, it can not be ignored. Without this statute the principal contractor could by a general assignment divert the contract price in large part to the benefit of antecedent creditors. The statute could be rendered more equitable, perhaps, if it provided for a pro rata distribution of the unpaid price among the labor and materialmen. But it is not so written. The conclusion is unavoidable in this case that the plaintiff has brought itself within the provisions of the statute and is entitled to the preference.

Some other points are argued by appellant. Objection is made to certain credits claimed and taken by the school district; one being for $30 for insurance and the other being for about $200 for an old building that was taken by Netcott at such agreed price. It is sufficient to say that the points here urged were not made in the court below. A stipulation of facts was entered into, and the case was tried thereon. From this the amount of the indebtedness appears as above stated.

The judgment of the trial court must be—*Reversed* and the case *Remanded*.