MARYLAND CASUALTY COMPANY, Appellant, v. DES MOINES CITY EVANGELIZATION UNION et al., Appellees.

MECHANICS' LIEN:    Perfecting Lien—Non-Necessity for Itemized
1, 3, 5 Statements and Notice.   The filing by subcontractors of itemized statements, and the service on the *owner* of notice of such filing, are wholly unnecessary, when there is no contest as to the amount due from the owner to the principal contractor, and the contest for priority to the admitted fund is solely between the principal contractor and his subcontractors.

MECHANICS' LIEN:    Priority—Subsequent Purchasers or Incum-
2 brancers.   An assignee of the claim held by a principal contractor against the owner, even though the assignment was made after the expiration of 30 days from the furnishing of *all* labor or material, simply stands in the shoes of the assigning contractor. Such assignee is not a "purchaser" or "incumbrancer," within the meaning of Sec. 3092, Code, 1897.

MECHANICS' LIEN:    Perfecting Lien—Non-Necessity for Itemized
1, 3, 5 Statements and Notice.

MECHANICS' LIEN:    Priority—Final Payment—Conditions Preced-
4 ent.   A principal contractor (and his assignee has no greater right) may not demand that a balance due him from the owner

be paid to him, to the exclusion of the claims of his subcontractors, when said final payment is, by contract, only due and payable on the condition that the principal contractor furnish to the owner receipts in full for all claims of subcontractors.

MECHANICS' LIEN:  Perfecting Lien—Non-Necessity for Itemized 1, 3, 5 Statements and Notice.

*Appeal from Polk District Court.*—Lawrence De Graff, Judge.

May 20, 1918.

Rehearing Denied September 20, 1918.

Suit in equity to foreclose a mechanics' lien. A decree was entered, finding defendant indebted to plaintiff, as assignee of one Errington, a building contractor, in the sum of $1,362.43, and establishing a lien therefor upon certain property, subject, however, to the payment of certain debts due from Errington to several intervening subcontractors. The plaintiff appeals.—*Affirmed.*

*Miller & Wallingford* and *Oliver H. Miller,* for appellant.

*W. L. Smith, Royal & Royal, Ole O. Roe, Wessells & Wessells, C. L. Snyder, Tesdell & Mackaman,* and *R. L. Hudson,* for appellees.

Weaver, J.—On April 30, 1914, Arthur Errington, a builder, entered into a written contract with the defendant to provide the necessary materials and labor and to construct a certain church building in the city of Des Moines, and to complete the same on or before September 1, 1914. The contract price of the building was fixed at $9,880. Payments in installments not to exceed 85% of the material and labor actually furnished by the contractor were to be made from time to time as the building progressed,—not oftener than once each week,—and the re-

mainder of the contract · price within 30 days after the completion of the building and its acceptance by the owner and the performance of certain conditions by the contractor, as expressed in the following paragraphs, which we quote from the written agreement:

"If, at any time, there shall be evidence of any lien or claim for which, if established, the owner of said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify the owner against such lien or claim. Should there prove to be any such claim or lien after all payments are made, the contractor shall refund to the owner all moneys that the owner may be compelled to pay in discharging any lien on said premises made obligatory in consequence to the contractor's default. Prior to the making of the final payment, and as a condition precedent thereto, the contractor agrees to furnish and deliver to the owner receipts in full for all materials and labor furnished and used in said church building. The contractor further agrees to indemnify against any and all mechanic liens that may be placed against said church building."

The building was not completed within the contract period; and, in January, 1915, the work being still unfinished, the contractor abandoned it; and, on February 18, 1915, instituted suit to recover an alleged remainder due him of $2,735, and for the enforcement of a mechanics' lien to that amount upon the property. On March 6, 1915, the defendant appeared in said suit and filed its answer, denying any indebtedness to plaintiff, and alleging, in substance, that he had failed to perform his contract or perform the conditions upon which the contract price was made payable. There was also a plea of payment. In May, 1915, the Maryland Casualty Company gave a written notice to the defendant that it had received from Errington an assignment

of his account and claim against defendant; but said company did not become a party to the suit, and was not substituted as plaintiff until December 30, 1915, and the issues were not finally settled until December 4, 1916. During the period beginning May 4, 1915, and ending March 23, 1916, the Randall Lumber Company and nine others, who had furnished Errington labor and materials in the construction of the building, and whose claims and accounts so arising had not been paid by Errington, severally intervened in this suit, setting up their said claims, and asserted a lien therefor, which they asked the court to confirm and enforce. With perhaps one or two exceptions, none of these subcontractors had filed any previous itemized account of their several claims, under the provisions of Code Section 3092; but each, in his petition of intervention, set out the alleged facts in general terms, and each asserted a lien for the amount of his claim, and prayed a foreclosure thereof. Upon each of these petitions, the plaintiff joined issue, and pleaded the failure of the intervenors to file verified statements of their several claims, in the manner or within the time provided by the statute.

The issues having been settled, they were referred to W. G. Harvison, Esq., to hear, try, and report thereon, with findings of fact and conclusions of law. Trial was had to the referee, who made and filed his report in due form. For the purposes of this appeal, it is unnecessary to set out the report in full. Briefly stated, the referee found that, as between the plaintiff and its assignor, Errington, on the one hand, and the defendant Evangelistical Union on the other, there was a remainder due the plaintiff to the amount of $1,362.43, for which sum it was entitled to have its claim for a mechanics' lien established. This relief, was, however, made subject to the claims of the intervenors, to whom it was found Errington was indebted in the aggregate sum of $1,009.21, for labor and materials furnished

him in the construction of the building. In other words, the referee, having found the remainder due to Errington and assigned to plaintiff, further found that this sum, when collected or paid, should be first applied to the payment of the intervening subcontractors' claims, as adjudicated; and that the remainder, if any, should then be paid over to the plaintiff. The plaintiff's objections to the report of the referee were overruled, and a decree entered in accordance therewith. Plaintiff appeals.

I. The appellant makes no complaint, in argument, that the amount found due from the defendant to plaintiff is less than it should have been, nor is it contended that, as between Errington and the intervenors, the latter were not entitled to recover the several sums reported by the referee in their favor. The proposition relied upon for a reversal or modification of the decree below is that the intervenors failed to observe the provisions of Code Sections 3092 and 3094, in that they did not, within 30 days from the date when the materials were furnished or labor was performed by them for Errington, file with the clerk of the district court verified statements of their several accounts or demands, nor did they, or either of them, intervene in this action or file petitions asserting their alleged right to a lien or liens until long after said period of 30 days had expired, and after the plaintiff had served notice upon defendant of Errington's assignment to the plaintiff; and that, by reason of this alleged failure of the intervenors, their alleged liens and right to preference in the distribution and application of the moneys earned by Errington and remaining unpaid, cannot now be asserted, or given preference against the plaintiff, as Errington's assignee. This objection, variously stated, presents the only question we have to consider upon the merits of this litigation. So far

1. MECHANICS' LIEN: perfecting lien: non-necessity for itemized statements and notice.

as is material in this case, the statute under consideration is as follows:

"Sec. 3089. Every person who shall do any labor upon, or furnish any materials * * * for, any building, * * * by virtue of any contract with the owner, * * * contractor or subcontractor, * * * shall have for his labor done, or material * * * furnished, a lien upon such building erection or improvement * * * to secure payment for such labor done or material, machinery or fixtures furnished."

"Sec. 3092. Every person, whether contractor or subcontractor, who wishes to avail himself of the provisions of this chapter, shall file with the clerk of the district court of the county in which the building, erection or other improvement to be charged with the lien is situated, a verified statement or account of the demand due him, after allowing all credits, setting forth the time when such material was furnished or labor performed, and when completed, and containing a correct description of the property to be charged with the lien, which statement or account must be filed by a principal contractor within ninety days, and by a subcontractor within thirty days, from the date on which the last of the material shall have been furnished or the last of the labor was performed; but a failure to file the same within said periods shall not defeat the lien, except against purchasers or encumbrances in good faith, without notice, whose rights accrued after the thirty or ninety days, as the case may be, and before any claim for the lien was filed."

Sec. 3094. A subcontractor may, at any time after the expiration of said thirty days, file his claim for a lien with the clerk of the district court, and give written notice thereof to the owner, or his agent or trustee, * * * and from and after the service of such notice his lien shall have the same force and effect, and be prosecuted or vacated by bond, as if filed within the thirty days, but shall be en-

forced against the property or upon the bond, if given by the owner, only to the extent of the balance due from the owner to the contractor at the time of the service of such notice upon him, his agent or trustee; but if in such case the bond is given by the contractor, or person contracting with the subcontractor filing the claim for a lien, such bond shall be enforced to the full extent of the amount found due the subcontractor."

"Sec. 3095. The liens provided for by this chapter shall take priority as follows: * * *

"2. They shall take priority of all garnishments of the owner for the contract debts, whether made prior or subsequent to the commencement of the furnishing of the material or performance of the labor, without regard to the date of filing the claim for such lien."

Taking all these provisions together, it will be seen that the contractor or subcontractor contributing to the building or improvement has a lien for his payment from the instant the labor is performed or the material furnished, although there be nothing yet placed upon or filed of record. The provisions which follow, with reference to the filing of a proper statement and the giving of notice, are not essential to the creation or existence of the lien, as between the subcontractor, contractor, and owner. Section 3092 expressly provides that the failure to file the statement for a lien shall not operate to defeat it, except in the interest of "purchasers or incumbrances in good faith, without notice" whose rights accrued after the expiration of the prescribed period for filing. Section 3094 is clearly intended to continue the subcontractor's right to a lien without filing a statement beyond the 30 days' limit, and at the same time provide protection to the property owner, who might otherwise, in the absence of notice, be unable to make final settlement with the principal contractor without risk of loss.

Can it be said that the appellant is a purchaser or in-

cumbrancer in good faith without notice, within the mean-
ing of Code Section 3092? Quite clearly not. In the first
place, this action was begun by Errington
2. MECHANICS'
LIEN: priority: to enforce his claim under his contract with
subsequent
purchasers or the defendant; and, had the case been pros-
incumbrancers.
ecuted to judgment under his name and
right, and the interventions had been made just as they
were in fact made, the court would not for an instant have
tolerated a demand on his part to recover and absorb the
entire amount due from the owner, to the exclusion of the
intervenors, who had furnished the labor and materials
which had enabled him to carry on the work of construction.
Counsel will hardly assert the possibility of such a holding.
Yet upon what principle of law or equity does the plaintiff,
as the assignee of Errington's right in this law suit, ac-
quire any greater right or become entitled to other or great-
er relief than would have been given Errington, in the ab-
sence of an assignment? With Errington as plaintiff and the
owner as defendant, the court acquired jurisdiction to settle
and adjudicate all their rights under the contract sued upon.
Under the statute, and under the express terms of the con-
tract, such settlement and determination of their respective
rights necessitated inquiry into the existence of claims by
subcontractors, and especially of such subcontractors as
might avail themselves of their right to intervene. As-
signment of his rights by Errington to appellant could have
no effect to restrict the jurisdiction of the court, or to
change in the least the nature of the issues to be tried, or the
relief to which the defendant or the intervenors might be
entitled. The only change it did effect in the situation was
to substitute appellant as plaintiff, with the right to try
out the case as Errington could rightfully have done, and
to have the benefit of any recovery or relief to which Er-
rington would have been entitled, had no assignment been
made. Appellant's argument seems to assume that this

situation is materially affected by the fact that, in May, 1915, and before the petitions of intervention were filed, it gave notice to defendant of its acquirement by assignment of Errington's claim. We are unable to see how such notice has any bearing upon the rights of the parties, except, perhaps, that, after receiving such notice, defendant could not safely pay the principal contractor, or enter into any compromise with him.

Again, it is urged that Section 3094, while recognizing the continued existence of the subcontractor's lien after the expiration of 30 days, makes such extended right to depend upon the service of written notice by the lien claimant upon the owner. Such notice not being shown, counsel draw the conclusion that the intervenors are entitled to no relief. The argument involves what we conceive to be a misconception of the purpose and effect of the statute. The notice is one to which the owner only is entitled; and, as we have already intimated, it is to protect him against such prolonged extension of the lien as might embarrass him or imperil his rights in a settlement with the contractor. He alone may insist upon the notice; and if, having still in his hands an amount due the principal contractor, which will protect him if the lien be established, he waives or does not elect to rely upon the failure of notice, neither the principal contractor nor his assignee is in a position to object, or to assert that the lien has been lost. The authorities cited and relied upon by the appellant are in no wise inconsistent with this conclusion. The decision in *Independent School Dist. v. Hall,* 159 Iowa 607, which is particularly pressed upon our attention, is not at all in point. There, the contractor had undertaken to construct a public building, a schoolhouse; and the claims of the subcontractor were not made or recognized as existing under the general mechanics' lien act, Code Sections 3089 *et seq.,* which we have already cited as governing the case now be-

fore us.. The right to a mechanics' lien, under proper circumstances, may be asserted against private buildings and private property; but there is no such right as against public buildings. There can be no mechanics' liens upon a schoolhouse; but there is a statute, Code Section 3102, by which a subcontractor who files his claim in due time may become entitled to have the money due the principal contractor applied by the school district to the payment of his claim. In such a case, no lien upon the fund attaches until the subcontractor complies with the condition precedent, and files his statement within the prescribed time. On the contrary, under the statute applicable here, a lien exists, by virtue of the statute, from the first extension of credit to the contractor, against all persons other than purchasers and incumbrancers in good faith whose claims have arisen after the expiration of the period for filing.

There is in this case no contest or conflict between the subcontractors over the order of priority of their several claims, and it is unnecessary for us to consider or decide how the parties to such a dispute, if one existed, would be affected by failure to serve the notice provided for in Code Section 3094. It is enough, for present purposes, to hold that, where the property owner raises no objection on that score, neither the principal contractor nor one claiming under him, as an assignee of his demand against the owner, has any standing to assert priority over the subcontractor.

It should also be said, concerning the facts in this case, that the substituted plaintiff, though a surety company, is not a surety upon the contract here under consideration. It appears, however, that said company is, or was, Errington's surety for the performance of another contract for a third party; that Errington defaulted therein, thereby involving the company in liability for the resulting loss; and that, to reimburse or secure his said surety, Errington made to it the assignment of his cause of action in the present suit.

As such assignee, the company is neither a purchaser nor incumbrancer in good faith without notice, as those terms are used in the statute. That our interpretation of Code Sections 3092 and 3094 is correct, is emphasized by the provision of the next following section, giving the subcontractor's lien preference, without regard to the date of its filing, over the rights acquired by a garnishing creditor of the principal contractor. If such creditor cannot displace the contractor's lien by garnishment of the owner, and if the principal contractor cannot displace it in a suit brought to enforce his own lien, then, surely, the legislature did not intend to permit the two together to accomplish the end, by an assignment from the principal contractor to his creditor, and a substitution of the latter as plaintiff in the foreclosure proceeding. This result is so clearly inevitable, and the intent and effect of the statute so evident, that argument and discussion seem superfluous.

II. If we understand the further position taken by counsel, it is that, even if it be held that the intervenors did not lose their liens by failing to file verified itemized statements therefor within the 30-day limit, yet such filing was a condition precedent to their right to assert and enforce such liens by proceedings in court. But this point, we think, is not well taken. As already noted, the lien comes into being by the operation of the statute, from the time when the subcontractor begins to furnish labor or materials to the principal contractor. No formal statement or filing is required for that purpose. The act of the subcontractor in thus furnishing labor or materials is, itself, constructive notice to the world of his lien; and this notice is effective until the subcontract is performed, and 30 days thereafter. To prevent the lapsing of such notice, and the acquirement of superior rights by purchasers and incumbrancers in good faith, the filing of a

3. MECHANICS'
  LIEN: perfect-
  ing lien:
  non-necessity
  for itemized
  statements
  and notice.

statement is required, within the 30-day period. As between subcontractor and principal contractor, however, such notice is not required, and failure to file the statement does not relieve the latter from his legal liability to pay the debt, nor discharge the lien by which it is secured. That a previous filing is not required as a condition of the court's assuming jurisdiction to enforce the lien against all persons other than purchasers and incumbrancers in good faith, is revealed by the terms of the statute to which we have referred, and has been so held by us in previous decisions. *Peatman v. Centerville L., H. & P. Co.*, 105 Iowa 1, 5; *Hoppes v. Baie*, 105 Iowa 648, 651; *Ewing v. Stockwell*, 106 Iowa 26, 30.

III. There is another and quite satisfactory ground upon which to sustain the decree below; a ground which, in some respects, is quite independent of the statute. It was perfectly competent for the parties to the building contract to stipulate the terms and conditions upon which the agreed price of the work should be paid; and, if those terms be clearly and definitely stated, the court will not ignore them in an action brought to recover such contract price. The parties did agree upon such terms in this case, and they are not at all ambiguous or difficult of construction. By referring to the extract from the contract quoted in our preliminary statement of this controversy, it will be seen that 85% of the price was to be paid from time to time as the work progressed; and that, with reference to the final payment of 15%, it was agreed that, "prior to the making of the final payment, and as a condition precedent thereto, the contractor agrees to furnish and deliver to the owner receipts in full for all materials and labor used and furnished in said church building." The argument for appellant seems to proceed on the theory that the only condition limiting the right of Errington to demand and receive his

4. MECHANICS'
LIEN: priority:
final payment:
conditions
precedent.

pay is expressed in the earlier paragraph of the contract, by which the owner reserved the right to retain, out of any payment due or to become due, an amount sufficient to satisfy any lien or claim "for which, if established, the owner might become liable." Such construction gives no effect whatever to the specified "condition precedent" upon which the maturity of the final installment of 15% was made to depend. Had that agreement been complied with by Errington, the intervenors would all have been paid; and, upon making that showing to the defendant, no dispute could fairly have arisen over the duty of the latter to pay the contract price. There is, however, no pretense that such payments were made or such vouchers presented by Errington or by appellant, and the court could do no less than to deny a right of recovery, because of the failure to perform the condition; or to decree its equitable performance by applying the unpaid amount in defendant's hands first to the payment of the subcontractor's claims, and permitting plaintiff to have the unexpended remainder. Such is the clear intent of the parties, as disclosed by the contract. The case is fairly within the rule in *Independent School Dist. v. Mardis,* 106 Iowa 295, and *City of Boone v. Cary,* 162 Iowa 695. It is true, as appellant argues in its reply, that the decisions in those cases construed and applied a contract in which the property owner expressly reserved the right to withhold payments to the contractor, in the event that the latter should fail to pay for materials or labor used in the construction of the improvement; but, while the terms of the contract in this case are not expressed in the same words, the effect of the language employed is not materially different. In other words, the express agreement that, before final payment to Errington of the last 15% of the agreed price, and "as a condition precedent thereto," he should furnish and deliver to the owner "receipts in full for all materials and labor furnished and used in the church

building," is the full equivalent of the owner's right in the *Mardis* case and in the *Boone* case to withhold payments from the contractor sufficient to satisfy the claims of sub-, contractors. The unpaid amount on the contract is substantially equal to the 15% of the contract price, which the defendant was entitled to retain until the condition was performed. Quite certainly, Errington could not recover it except upon performance of the agreed condition; and, as we have repeatedly said, the appellant's right in the premises is subject to the same condition.

It is further to be noted that this condition requiring payment for material and labor before the final installment of the price should become due, is not limited to claims constituting liens; and, so far as that provision is concerned, it is immaterial whether the subcontractors had or had not observed all the provisions of the mechanics' lien statute.

The suggestion of counsel that appellant, in purchasing Errington's claim, did not assume any of his liabilities, is correct, as a general abstract proposition of law; but it still remains true that the company takes the

5. MECHANICS' LIEN: perfecting lien: non-necessity for itemized statements and notice.

Errington claim subject to all the conditions and defenses which could have been pleaded or made use of against Errington; and if, under the contract, payment to him was made subject to a condition precedent, his assignee must see that the condition is performed before it is entitled to demand a recovery.

Other questions have been argued by counsel, but those we have considered appear to be decisive of the appeal, and further discussion is unnecessary.

The decree of the trial court is right, and it is—*Affirmed*.

Preston, C. J., Gaynor and Stevens, JJ., concur.