C. B. REYNOLDS et al., Appellants, v. CITY OF ONAWA et al., Appellees.

MUNICIPAL CORPORATIONS: Public Improvements—Assignment of
1   Contract—Priority in re Subcontractor. One who, as collateral security, takes an assignment of sums falling due under a public improvement contract, takes subject to the subcontractor's *contract* right to be first paid, even though the assignment was known to the city and subcontractor before the work was done or materials furnished.

**MUNICIPAL CORPORATIONS:**    Public    Improvements — Contract
2  **Method for Protecting Subcontractors.**  A contract for the construction of a public improvement may provide a *contract* method for securing the payment of ·claims of subcontractors, and in such case the latter may disregard the *statutory* method.

**MUNICIPAL CORPORATIONS:**    Public Improvements—Filing Claims
3  **of Subcontractors.**  A provision in a contract for the construction of a public improvement that subcontractors shall file their claims with the *mayor and city council* is substantially complied with by filing such claims with the *city clerk*.

*Appeal from Monona District Court.*—GEORGE JEPSON, Judge.

OCTOBER 25, 1921.

THE nature of the controversy and the facts material to a consideration of the merits of the case are sufficiently stated in the opinion.—*Affirmed*.

*John J. Hess,* for appellants.

*C. E. Cooper, George E. Allen* and *Samuel P. Davidson,* for appellees.

WEAVER, J.—On March 11, 1915, the plaintiff C. B. Reynolds entered into a contract with the city of Onawa, to construct for said municipality a so-called ''sewer outlet and purification plant.'' This work lingered in its progress from the date named until May, 1917, when, as it was still incomplete, and plaintiff was apparently unable to contend with his difficulties, he entered into a written contract with . the Inter Mountain Bridge & Construction Company, to finish the job upon the sewer outlet; while the city seems to have taken upon itself the completion of the purification plant, which it accomplished. In the course of the prosecution of the work by Reynolds, and thereafter by the Bridge & Construction Company, numerous claims accrued in behalf of persons furnishing materials and supplies used in making the improvement. It is the claim of the Bridge & Construction Company that for its work under the contract for completing the outlet, it became en-

1. MUNICIPAL CORPORATIONS: public improvements: assignment of contract: priority in re subcontractor.

titled to receive the sum of $6,926.31. The city's claim for expenditures in completing the purification plant is $1,111.61. Of the individual claims, other than the two here mentioned, we shall not undertake a detailed statement. For the purposes of this appeal, it is sufficient to say that the trial court, after due examination of these miscellaneous items, and after eliminating those not justly chargeable in this accounting, found the gross amount thereof to be $6,453.18. An examination of the record satisfies us with the substantial correctness of the trial court's finding in this respect. It also appears that, after allowing the city proper credit for its expenditures, there remains in its hands an unexpended remainder of the contract price to the amount of $12,605.35. To complete the statement of the general situation and make clear the dispute over the proper application of this unexpended remainder, it should be added that, about the time Reynolds entered upon the performance of his contract with the city, he arranged with the City National Bank of Council Bluffs for such credits and advancements as he might, from time to time, need in the prosecution of the work; and that, to secure payment of the indebtedness so arising, he made to the bank a written assignment of his contract with the city. Under this arrangement, the bank did make large advancements to Reynolds, much of which is still unpaid. To enforce its claim under this assignment, the bank intervenes in this action, asserting a prior lien upon the moneys due Reynolds; while the other claimants insist that their rights in the premises are superior to those of the bank. The court found against the bank's claim to priority, and adjusted the account on the basis already stated. The plaintiff Reynolds and the intervener bank alone appeal.

For a proper appreciation of the merits of this inquiry, it should also be said that the original contract between Reynolds and the city provided that parties having unpaid claims for labor or materials furnished for the work could file their claims with the mayor and city council, and that the council should withhold out of any money due the contractor a sufficient amount to pay the claims so filed. The claims of this character allowed by the trial court, or many of them, were filed

2. MUNICIPAL CORPORATIONS: public improvements: contract method for protecting subcontractors.

with the city clerk, and not elsewhere. Some were not verified by affidavit, and most of them were not filed until after the lapse of 30 days from the date when the materials were furnished.

Arguments in this court are centered upon the question of priority, as between the bank and the creditors who furnished materials used in the performance of the contract. The appellants, Reynolds and the bank, take exception to the ruling of the trial court giving preference to these creditors on the following grounds:

I. It is said that, under the statute, Code Section 3102, it was "incumbent on subcontractors desiring to obtain and enforce a lien or preference to file with the public officer through whom payment is to be made, written and verified statements of their several claims, within 30 days after the furnishing of the last material for which payment is demanded;" and it is objected that this requirement was not observed, in that the filings were made with the city clerk, and not with the city treasurer, and not until after a lapse of more than 30 days.

Even if the objection thus raised could, under some circumstances, be made available to the principal contractor or his assignee, it is sufficient to say that the materialmen whose claims were allowed by the trial court do not base their right to recovery and preference upon the cited statute, but upon the terms of the contract between Reynolds and the city. Neither party has seen fit to include said contract in full in the printed record, but it is made to appear that among its provisions are the following:

"If any bills for material used in the work shall be filed with the mayor and city council before the monthly or final estimates are passed upon, then so much of the contractor's account shall be withheld until evidence of satisfactory settlement is presented and a satisfactory bond shall be filed guaranteeing the payment of such claim or so much thereof as may be determined proper by the court. * * * A final estimate giving the total contract price for work actually done, will be made at the time of conclusion of the work and contractor will then file with the engineer receipts in full account for all material; he will submit his receipted pay roll to the engineer for inspection; as soon

thereafter as the plant has passed the inspection and the tests provided, the contractor will be paid the full amount of the final estimate, or such as remains thereof after deducting the sum of all unpaid bills and previous estimate from said estimate.''

It is by the terms and provisions of this agreement, and not by those of the statute, that the rights of the parties are to be measured. Applying this standard to the conceded or well proved facts now under consideration, there is no room to doubt the essential correctness of the conclusion reached by the trial court. This question was before us in *City of Boone v. Cary,* 162 Iowa 695. There, an assignee of the principal contractor contended for preference over the claim of subcontractors for materials furnished. There, as in this case, the assignee objected to the allowance of the claims of materialmen because they had not been filed and perfected in the manner provided by statute. In overruling such objection, we said:

''The appellant says that neither the trial court nor the city required the holders of these claims to perfect them under the provisions of Code Section 3102. * * * But we think the rights of the laborers and materialmen in this case do not depend upon their compliance with that provision, and the city was not required to insist upon compliance with it. * * * In other words, the right is contractual—not statutory. The city in such case is bound only to take care that the debts it thus assumes to pay for the contractor are bona-fide claims for labor or material, and if this be done, other creditors who are thus postponed suffer no wrong.''

This same proposition has often been affirmed in other cases. See *Independent Sch. Dist. v. Mardis,* 106 Iowa 295; *Maryland Cas. Co. v. Des Moines C. E. U.,* 184 Iowa 246.

The filing of the accounts with the city clerk was a substantial compliance with the contract condition that they be filed with the mayor and council, and affords no ground on which to

3. MUNICIPAL CORPORATIONS: public improvements: filing claims of subcontractors.

postpone their payment in favor of the assignee of the contractor. Appellant places considerable reliance on our decision in *Independent Sch. Dist. v. Hall,* 159 Iowa 607, where the assignee of a contract was allowed to prevail over materialmen who failed to file their claims within the statutory time. But what is there

said must be read in light of the fact that the claims of the materialmen were expressly based upon the statute, and were denied because the claimants failed to bring themselves within its terms. The opinion expressly notes the distinction by pointing out the fact that, in the contract in that case, "the district does not undertake to pay for labor or material furnished by sub-contractors, where the claims remain unpaid, nor does it reserve the right to withhold payment from the original contractor until such claims are settled or released."

It is manifest that the *Hall* case furnishes no support for the appellant's contention.

II.   The contract between Reynolds and the Bridge & Construction Company was in writing, and provided that the latter should perform the work to finish the "uncompleted sewer work" for a compensation to be computed on a stated per diem basis for the services of certain named persons and for the use of a trench machine, and the actual cost of other labor and materials. It is in accordance with these stipulations that the trial court computed and allowed the claim of said company at $6,453.18. The appellants, while admitting the making of this contract, pleaded and offered considerable testimony to the effect that, after the contract was signed, but before the work was done, the written agreement was abandoned, and an oral agreement was substituted, to the effect that the Bridge & Construction Company would do the job for the lump sum of $1,000. This is strongly denied by the company. The testimony offered by the parties upon the issue so raised is in radical conflict, and the trial court found that the burden of proving such abandonment of the written agreement had not been sustained. In that finding we concur. Without in any manner impugning the veracity of any of the parties or witnesses in this respect, we think that, in view of the conceded fact that they did make and execute the written agreement, and that such agreement was not given up or destroyed, and that the alleged abandonment or radical change in its terms is unequivocally denied by the persons acting for the company, it must be said that this defense or objection to the Bridge & Construction Company's claim has not been established.

III.   Counsel for appellant seems to argue that, since Rey-

nolds' contract with the city had been assigned to the intervener bank very soon after it was executed, and before the claims of the subcontractors had accrued, it operates in some way to give the bank a position of greater advantage, as relates to the subcontractors, than would have been occupied by Reynolds, had the contract never been assigned. The contention is not sound in principle, and is inconsistent with our prior holdings. Under its assignment from Reynolds, the bank acquired no other or higher right to the compensation provided for in the contract than Reynolds himself had; and this right was, by the terms of the writing itself, expressly made subject to the right and duty of the city to withhold payment to the contractor ''until evidence of satisfactory settlement is presented and a bond shall be filed guaranteeing the payment of such claims or so much thereof as may be determined proper by the court.'' This duty and obligation, as we have seen, were further emphasized by the provision that, when the work is completed, the final payment to the contractor shall be only such amount of the final estimate ''as remains after deducting the sum of all unpaid bills and previous estimates.'' What the bank acquired under its assignment was the right to stand in the contractor's shoes, and demand and receive from the city just what the contractor himself could rightfully demand and receive, had he made no assignment, and were he now demanding payment according to the terms ''nominated in the bond.'' The application of this rule is in no manner prevented or avoided by the fact that the assignment to the bank was known to the city, nor by the fact that the subcontractors had actual or constructive notice thereof when they furnished the materials for which they demand payment. Such is the rule we applied in *City of Boone v. Cary,* supra. It was also expressly recognized in an ordinary mechanics' lien ·case, where the assignee of the contractor asserted rights to which the contractor himself would not have been entitled. *Maryland Cas. Co. v. Des Moines C. E. U.,* 184 Iowa 246, 253. The stream can rise no higher than its source. The assignment put the bank in position to demand of the city, when the work was done, just what, except for such assignment, Reynolds could rightfully have demanded, and no more. If this controversy were, as appellants seem to think, a mere question of priority of statutory

liens, the arguments pressed upon our attention in behalf of Reynolds and the bank would be quite pertinent; but that question is not before us.  As we have already said, the appellees are not claiming to have any such lien, nor does the trial court's decree recognize or give force to such claim.  The rights set up by the appellees and adjudicated by the decree are contractual, and the assignee of the contract has no standing to insist that the subcontractors' rights thereunder are conditioned upon the observance by them of the lien statute, Code Section 3102.  The bank took the assignment as collateral security only for its advancement to Reynolds.  It did not assume or pretend to perform the work contracted for, but acquired simply the right to receive the compensation which Reynolds should earn under the terms of the contract.  Its rights in that respect are measured by and cannot exceed the right of its assignor, and that is the right to receive what remains due to the assignor after deducting payments already made and the sum "of all unpaid bills," the amount of which the city had bound itself to withhold for the benefit of claimants.  Such is the effect of the decree, and its soundness cannot be seriously questioned.

The decree of the district court is, therefore,—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.