C. E. STUKAS & SONS, Appellee, v. MILLER & LADEHOFF et al., Appellees; CONSOLIDATED INDEPENDENT SCHOOL· DISTRICT OF ELVIRA, Appellant.

**SCHOOLS AND SCHOOL DISTRICTS: Contracts in General—Duty to Protect Subcontractors.**  A school district which, under its contract for the construction of a public building, reserves the right to retain a named percentage of the contract price until at least sixty days after the completion of the building, and pays out said retained amount prior to the time provided in the contract *and statute,* with knowledge that subcontractors were furnishing materials for said building, will, in equity, *be held to have said retained percentage on hand* for the discharge of claims filed under the statute.  And this is true even though the district attempts by contract to absolve itself from all responsibility to subcontractors.

*Appeal. from Clinton District Court.*—F. D. LETTS, Judge.

APRIL 1, 1924.

ACTION in equity, by plaintiffs and other subcontractors, against contractors, the surety on their bond, and the school district, praying enforcement of claims for material and labor furnished.  Some of the subcontractors filed petitions of intervention.  It was sought to enforce in equity claims against the

school district to the extent of 15 per cent of the contract price
for the school building, which, under the contract, was to be
withheld until after the building was completed, but which was
paid before that time. It is claimed that the school district
thus negligently and. wrongfully paid out $8,000. The trial
court held that, the case being in equity, and the district having
paid out the 15 per cent wrongfully and in violation of the con-
tract, it was in the same position as though they still retained
the 15 per cent of the contract price in its possession, and found
for plaintiffs and interveners, and held that the school district
was liable to them in the sum of $7,875. Judgment was rendered
for that amount, and the trial court directed the distribution
of the amount among the several claimants according to the
priority of their claims, and that the decree should be without
prejudice or bar to any rights of the parties to the suit, as
against the contractors. The school district alone appeals.—
*Affirmed.*

*Wolfe, Wolfe & Claussen* and *Skinner & Peterson Law
Co.,* for appellant.

*L. F. Sutton* and *F. W. Ellis,* for appellees.

PRESTON, J.—The pleadings, comprising plaintiff's peti-
tion, the several petitions of intervention, the cross-petition of
the bonding company against the school district, the answers,
exhibits attached to the pleadings, such as the contract, plans,
specifications, and so on, are quite voluminous. Many pages of
the abstract are taken up with their printing. The facts were,
for the most part, stipulated.

Numerous questions were presented below. Appellant argues
two or three propositions in this court, but appellees contend
that the questions as now presented are narrowed to one issue,
which, as they state it, is that certain of the appellees claim the
right to recover up to 15 per cent of the contract price, by reason
of filing their claims under Section 3102 of the Code, as amended
by Chapter 380, Acts of the Thirty-eighth General Assembly,
and all appellees claim the right to recover up to 15 per cent of
the contract price, because of the implied and expressed con-

tractual relation between them, the subcontractors, and the school district; that all other issues are collateral or contingent upon the one stated; and that the determination of that question against appellant will determine the entire controversy.

Appellant denies the right to recover, because the school district paid the contractors in full, and because, as it claims, they were absolved from liability by the terms of the contract, and because the bonding company alone is liable to the subcontractors.

The plaintiff and two of the interveners, whose claims aggregated approximately $3,000, filed their verified claims, notified the district, and complied with the statute before referred to. The other interveners did not strictly, perhaps, do so; but their petitions of intervention, to which were attached itemized statements, were filed before 60 days from the completion of the building, which they contend was a substantial compliance with the statute, and resulted in no prejudice to appellant. *Wackerbarth & Blamer Co. v. Independent Sch. Dist.*, 157 Iowa 614, 616. The representative of the school district, who was on the job, knew that materials were being furnished by them.

The contract price was $52,500. Fifteen per cent of this is $7,875, the amount for which defendant school district was held liable. The general conditions of the contract, the specifications, and drawings, were made a part of the contract. The contract was made a part of the bond, the condition of which is that, if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then the obligation to be void; otherwise in force.

The contract was executed September 10, 1919. There was delay. The contractors became insolvent, and were so at the time of the commencement of this action. At the last, the school district did some work to complete the building. On January 29, 1921, a written memorandum was made between the con-

tractors and the district, wherein the contractors agreed to do certain specified things which were unfinished. They did some work after that, but did not do all the things so agreed. The $8,000 was paid by the district to the contractors February 3, 1921. At that time, the district knew that the building was not completed, and that there was other work to do under the contract. When the $8,000 was paid, the contractors had something more than that in the building,—that is, counting what labor and materials interveners had put in, and the 15 per cent retained. After the $8,000 was paid, the school district still had approximately $500 which they retained. The last work performed by the contractors was March 3, 1921. The painting was completed March 19, 1921. The other unfinished parts of the work were done by the district about August 1, 1921, and the district paid therefor out of the $500 just referred to. After the payments so made to complete the contract which the contractors had failed to do, there still remains a balance in the hands of the district of something over $300.

Provisions of the contract which seem to be material are:

Art. 1: The contractor agrees to provide all materials and to perform all the work shown on the drawings and described in the specifications, and to do everything required by the general conditions of the contract, specifications, and the drawings.

Art. 2: Contractor agrees that the work under the contract shall be substantially complete, ready for occupancy and acceptance of the building, at the time noted in the specifications.

Art. 3: Fixes the contract price, subject to additions and deductions as provided in the general conditions of the contract, and to make payments on account thereof as provided therein, as follows:

"Payments to be made monthly, and to be eighty-five per cent (85%) of the labor performed and the materials delivered on the premises, contractor's payments shall be made upon receipt of the architect's certificate, issued by the architect and based on the monthly estimate submitted to the architect by the contractor. Fifteen per cent (15%) of the amount of the contract price shall be *retained sixty* days after the completion and acceptance of the contract to provide protection of the owners against any liens," etc.

"Specifications: Art. 1 (j) All time limits stated in the contract documents are of the essence of the contract."

"Art. 28: The architect may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate for payment to protect the owner from loss on account of: * * * (b.) Claims filed or reasonable *evidence* indicating *probable filing* of claims. (c) Failure of the contractor to make *payments* properly to· *subcontractors* or for material or labor. When all the above *grounds are removed* certificates shall at once be issued for amounts withheld because of them.

"Art. 29: Liens—Neither the final payment nor *any part* of the *retained* percentage shall become *due* until the contractor, if required, shall deliver to the owner a complete release of all liens arising out of this contract, or receipts in full in lieu thereof and, if required in either case, an affidavit that the releases and receipts include all the labor and material for which a lien *might* be filed; but the *contractor* may, if any subcontractor refuses to furnish a release or receipt in full, *furnish a bond* satisfactory to the owner, to indemnify him against *any claim* by lien or otherwise. If any lien or claim remain unsatisfied after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging such lien or claim, including all costs and a reasonable attorneys' fee."

"Art. 43: Nothing contained in the contract documents shall create any contractual relation between any subcontractor and the owner.

"Art. 44: Nothing in this article shall create any obligations on the part of the *owner to pay* to or to *see to the payment* of any sums to any subcontractor."

The conditions of the bond have already been noticed.

Appellant relies most strongly on the two articles just quoted, 43 and 44, claiming that thereby the school district is absolved from payment or liability to subcontractors. It contends that the district is not liable for any of the claims.

Appellees contend that this ignores other provisions of the contract and the statute; that all the provisions of the contract must be interpreted together, and so construed as to make all harmonize, if this can be done. Appellees call attention to Arti-

cles 1, 28, 29, and other provisions of the contract and specifications before set out.

Prior to the execution of the contract, Code Section 3104 was amended, and took effect March 14, 1919, as follows:

"No provisions of any bond or contract to the contrary shall affect any of the provisions of this and the two preceding sections." Chapter 53, Acts of the Thirty-eighth General Assembly.

It would seem, and this is appellee's contention, that Articles 43 and 44 were inserted in the specifications in violation of the statute. The contention is that they are nugatory for all purposes, contractual or statutory. Code Section 3102 provides, in part, that:

"Every mechanic, laborer or other person who, as subcontractor, shall perform labor upon or furnish materials for the construction of any public building, bridge or other improvement not belonging to the state, shall have a claim against the public corporation constructing such building, bridge or improvement for the value of such services and material, not in excess of the contract price to be paid for such building, bridge or improvement, nor shall such corporation be required to pay any such claim before or in any different manner from that provided in the principal contract."

The section then provides how the claim shall be made. Chapter 53, supra, became the law, at least as to some phases of the proposition, after Section 3102 had been enacted. Before this amendment, the statute provided that the corporation should not be required to pay in any different manner from that provided in the contract, but by the amendment it is provided that the provisions of the three sections shall not be affected by the contract. Section 3102 was further amended by Chapter 380, supra, Section 2, by striking the last three lines, which amendment allows claims to be filed within sixty days after the completion of the building, and so on.

The changes in the statute make some of our prior cases inapplicable. *Reynolds v. City of Onawa*, 192 Iowa 398, is cited on some of these propositions. While that case was not decided until October 25, 1921, the contract was entered into March 11, 1915. Chapter 53, supra, had not then been enacted. The

later amendments were not referred to or discussed in the *Reynolds* case.

We have held, in cases on building contracts, that they are decided on the facts and circumstances of each case, and that there are distinguishing features upon which each depends for determination.

Considering Articles 43 and 44 in connection with Articles 1, 28, and 29, we think the seeming conflict can be harmonized, if, since the change in the statute, that is necessary.

Article 1: Contractor agrees to provide all the material. "* * * fifteen per cent shall be retained sixty days after the completion and acceptance of the contract."

"Art. 28: The architect may withhold * * * Failure of the contractor to make payments properly to subcontractors.

"Art. 29: Neither the final payment nor any part of the retained percentage shall be due until," etc.

"The bond is conditional * * * Contractor shall perform the contract and satisfy all claims, pay all persons who have contracts directly with the principal for labor or materials," and so on.

The school district was not required to make the payment of $8,000 prematurely in February. It could have protected itself by retaining it until sixty days after the completion of the building, or by requiring another bond, under Article 29. Its failure to do so would be a wrong to subcontractors. Equity will not permit it to take advantage of its voluntary and wrongful payment. Under the statute, the subcontractors had 60 days after the completion to file their claims. To have protected themselves against the payment of the 15 per cent in February, the subcontractors would have been compelled to file their claims before the building was completed. Proceeding upon the presumption that the school district would comply with the statute and the contract, and retain the 15 per cent 60 days, the apparently conflicting provisions can be harmonized. The expression in the contract, 60 days after the completion, complied with Section 3102 of the statute as amended. Doubtless the contract was drawn with this statute in mind. In this connection, it is proper to consider that the alleged conflicting provisions were made in advance of the doing of the work. Had the district re-

tained the 15 per cent 60 days, then Articles 43 and 44, relied upon by appellants, would apply, and there would be no conflict. Articles 43 and 44, read in the light of the contract and the other clauses, would apply after the expiration of 60 days from the completion of the contract. The wrongful payment of the money is what makes the conflict. These and the other provisions are in discord only when the terms of the contract and the statute were violated by the school district. They are in accord if such terms had been followed. Had the district proceeded as authorized by the contract and by the statute, it would not now need to litigate with the unpaid claimants. It was the wrong of the school district that causes the controversy. *Mason City B. & T. Co. v. Lamson,* 190 Iowa 365, 371; *Iowa Brick Co. v. City of Des Moines,* 111 Iowa 272, 277. In the latter case, the city was compelled to pay twice because they paid the wrong party.

Perhaps what we have just said relates more particularly to the 60-day provision in the contract.

Appellant, to excuse the premature payment, cites *Wackerbarth & Blamer Co. v. Independent Sch. Dist.,* 157 Iowa 614; *Swearingen Lbr. Co. v. Washington Sch. Twp.,* 125 Iowa 283; *Modern Steel Structural Co. v. Van Buren County,* 126 Iowa 606. The *Wackerbarth* case is grounded on the *Swearingen* case, and payments were made in accordance with the terms of the contract. All these cases were decided at a time when the statute permitted payments according to the contract.

In the instant case, the school district paid the money contrary to both the statute and the terms of the contract. While subcontractors may not have a lien on the building, we have said that they do have a certain equitable right. *Wackerbarth & Blamer Co. v. Independent Sch. Dist.,* supra, at 618; *Des Moines Bridge & Iron Works v. Plane,* 163 Iowa 18, 22. We think equity requires that the district should have had the money on hand when these claims were filed and the suits commenced, in April and May, 1921. In this connection, we may refer again to the fact that the superintendent or inspector of the work for the district knew that interveners had furnished material for the building.

Appellees contend that, if their position in regard to the

statute is not sustained, then they may rely on the contractual relation. We think the discussion so far determines the case. The district being liable, we think that appellant's claim that it is not liable because there is liability on the bond is not a defense. The statute before quoted reads that no provision of the bond or contract to the contrary shall affect the provisions of Section 3102, giving the lien, or rather, the equitable right.

We reach the conclusion that the judgment and decree should be affirmed. It is—*Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.